### UNITED STATES of America, Appellee,

### v.

### Joseph BETHEA, Appellant.

### No. 78–5021.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1979.

Decided May 18, 1979.

Mark L. Waple, Fayetteville, N. C., for appellant.

Herman E. Gaskins, Jr., Asst. U. S. Atty., Raleigh, N. C. (George M. Anderson, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and MERHIGE, United States District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, District Judge.

Appellant-defendant, Joseph Bethea, having been found guilty by a jury of bank robbery and armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and having been sentenced by the trial court to a term of twenty years for armed bank robbery, appeals.

The government, in its case at trial, introduced into evidence two money straps which were taken from the victim bank at the time of the robbery, and it is as to the admission of this evidence which appellant challenges, contending that same was secured by virtue of an illegal search and seizure.

The search which defendant attacked in an unsuccessful motion to suppress at the trial court level and now attacks on appeal was carried out on July 1, 1977, in Newport News, Virginia by five law enforcement officers, including two Federal Bureau of Investigation agents, all of whom were dressed in civilian clothing. Having been notified that a federal warrant had been issued for Bethea's arrest, and having determined by a telephone call that he, Bethea, was at 882–A 35th Street, Newport News, Virginia, the home of his mother, the two agents and a local policeman approached the rear or kitchen door of that residence while two local police officers approached the front door. An agent knocked at the rear door and identified himself as an agent of the Federal Bureau of Investiga-

tion to defendant's seventeen year old sister, Jessie. The agent then informed her that he had a warrant for the arrest of Joseph Bethea. Ms. Bethea opened the door and yelled, "Joe". The agents and policeman entered the apartment and found defendant in the custody of the other officers who had apprehended him after he attempted to leave through the front door. Defendant was immediately advised of his constitutional rights and further that he was a suspect in a North Carolina bank robbery. One of the local police officers talked to Jessie Bethea and determined that only she and defendant were present in the apartment. Ms. Bethea agreed to show the officer where defendant had been "staying" since his arrival in Newport News. She then pointed out her bedroom and stated that defendant had spent some nights in that room since he had recently arrived at the apartment. The police officer requested her permission to search the room and she agreed, whereupon he informed her she had a right to refuse any search as the officers did not have a search warrant. Her response to that information was that "You can search, and I will help you." She thereupon turned to a nightstand and began searching, while the officers searched the chest of drawers and found two money straps, the seizure of which is here contested by appellant.

Prior to trial, the district court held an evidentiary hearing on Bethea's motion to suppress the evidence seized in the bedroom search. Bethea claimed that there was no valid consent for the search and that the officers violated 18 U.S.C. § 3109 by their entries into his mother's residence.

After hearing testimony from Bethea, Bethea's mother and sister, and from three of the arresting officers, the district judge denied Bethea's motion to suppress. The judge did not issue findings of fact or conclusions of law in support of his decision, and nothing in the record indicates that appellant ever requested him to do so.

The jury was then brought back into the courtroom, and defendant was tried and found guilty of the bank robbery charges.

The money straps seized in the bedroom search, which appellant had sought unsuccessfully to have suppressed from evidence, were introduced into evidence at the trial, and identified by a teller of the bank which had been robbed as the money straps which she had given to the robber.

In this appeal, Bethea raises the same issues which he argued before the trial court in the hearing on his motion to suppress: (1) Did the law enforcement officers violate 18 U.S.C. § 3109 by their entry into the Bethea residence through the front and rear doors? (2) Did Bethea's sister have the authority to consent to a search of the bedroom in which Bethea had been staying? (3) Did Bethea's sister knowingly and voluntarily consent to the police search of the bedroom?

The Court shall consider these issues seriatim.

Bethea first contends that the law enforcement officers who conducted the search of his mother's residence violated 18 U.S.C. § 3109 by entering the house without first receiving permission to so do from any of the occupants. This Court, however, finds no reversible error in the trial judge's refusal to suppress the seized money straps due to an alleged violation of 18 U.S.C. § 3109, which provides, in pertinent part, that

> An officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . . . .

Bethea contends that the federal law enforcement officers violated the requirements of 18 U.S.C. § 3109 by failing to request permission to enter the Bethea residence and by failing to wait to enter until an occupant of the house had first either granted or denied the officers permission to so do.

■ When, as in this case, a district court denies a motion to suppress evidence, without making or being requested to make findings of fact, the result will be upheld on appeal if any reasonable view of the evi-

dence, looked at in the light most favorable to the government, will sustain the denial. *United States v. Smith*, 543 F.2d 1141 (5th Cir. 1976), *cert. denied*, 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977); *United States v. Miner*, 484 F.2d 1075 (9th Cir. 1973); *Scarbeck v. United States*, 115 U.S. App.D.C. 135, 317 F.2d 546 (1962), *cert. denied*, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963).

In reviewing the record by this standard, there clearly is sufficient evidence to support the trial court's implicit finding that the officers did not violate 18 U.S.C. § 3109 in either their front or rear door entries into the residence.[1] At the hearing on appellant's motion to suppress evidence, an FBI agent who had entered the house through the rear door testified that the local police officer told him that they had entered the house through the front door to stop the appellant in his attempt to flee. In this situation the officers were not required to knock or to announce their entry; a generally recognized exigent circumstance which will excuse law enforcement officers from complying with the "knock and announce" requirements of 18 U.S.C. § 3109 is entry into the house to prevent the suspect's attempted escape. *See Sabbath v. United States*, 391 U.S. 585, 591, n.8, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Rodriquez v. Jones*, 473 F.2d 599, 607 (5th Cir. 1973), *cert. denied*, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973); *United States v. Wylie*, 149 U.S.App.D.C. 283, 291, n.53, 462 F.2d 1178, 1186, n.53 (1972); *United States v. Cisneros*, 448 F.2d 298, 304 (9th Cir. 1971); *United States v. Manning*, 448 F.2d 992, 1001–02 (2d Cir. 1971), *cert. denied*, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971).

Nor was the rear door entry violative of 18 U.S.C. § 3109. At the suppression hearing, Jessie Bethea testified that when the officers came to the house, the inside rear, or kitchen, door, was open but the screen door was shut. According to her testimony, one officer showed her his badge, after which she partially opened the screen door. Her testimony was to the effect that the officer then further opened the screen door and entered the house as she called her brother's name.

This contested entry was not the type of police entry which 18 U.S.C. § 3109 was designed to prevent. The agent both identified himself as a law enforcement officer and told Jessie Bethea that he and the other officers were there with a warrant for the arrest of her brother, Joseph, the appellant herein. Jessie Bethea partially opened the screen door, and the officers further opened the door and entered the home without any reported protest or resistance from Ms. Bethea. These particular facts do not reveal any "breaking" open of the door which is prohibited by the statute. *See United States v. Syler*, 430 F.2d 68, 70 (7th Cir. 1970) (entry by police into house without force and without resistance from defendant after defendant partially opened screen door was found not violative of 18 U.S.C. § 3109).

Appellant next contends that his sister, Jessie, did not have the authority to consent to the search of the bedroom in which he had been staying. The testimony at the suppression hearing, however, revealed that the bedroom which the police officers searched was usually used by Jessie Bethea, that she had slept in the bedroom during many of the nights immediately pri-

---

1. There is substantial authority that "[i]f the first or a contemporaneous entry is lawful, a defendant cannot complain of unlawfulness in other later entries." *Russo v. United States*, 391 F.2d 1004, 1006 (9th Cir. 1968), *cert. denied*, 393 U.S. 885, 89 S.Ct. 195, 21 L.Ed.2d 161 (1968); *accord, United States v. Marson*, 408 F.2d 644, 647 (4th Cir. 1968), *cert. denied* 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698 (1969); *United States v. Daniels*, 549 F.2d 665, 667 n.1 (9th Cir. 1977); *United States v. Bradley*, 455 F.2d 1181, 1186 (1st Cir. 1972), *aff'd on other grounds*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973); *United States v. Viale*, 312 F.2d 595, 602 (2d Cir. 1963), *cert. denied*, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963).

Because the evidence in this case is not conclusive upon the sequence of the police entries into the Bethea residence, however, this court shall examine each entry independently in light of the 18 U.S.C. § 3109 requirements.

or to the search, including nights when her brother was in town, and specifically the night immediately prior to the search.

Under these facts, the government met its suppression hearing burden of proving that Jessie Bethea had the authority to consent to the search of the bedroom. In discussing the authority of a third person to consent to police searches of areas or objects used jointly by the third person and a criminal suspect, this court has recently held that

> From whatever other sources this authority may be derived, it is well settled that it may be based simply upon the fact that the third person shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others.

*United States v. Block*, 590 F.2d 535 (4th Cir. 1978) (footnotes and citations omitted); *accord, United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

The police officer who conducted the search testified that Jessie Bethea told him that the room to be searched was her bedroom, used alternately by her and her brother. Applying the *Block* standard, the evidence shows that Jessie Bethea had the authority to consent to the search due to her common use with appellant of the bedroom and that, from her statements to the police officer, it was reasonable for the officer to believe that she had the right to consent to the search of the jointly used area.[2]

Appellant further argues that the search of the bedroom was invalid because the officers did not obtain his consent although he was present. By sharing the common area with his sister, however, appellant as-sumed the risk that his sister might consent to a search of the bedroom at any time, even when he, himself, was present. *United States v. Canada*, 527 F.2d 1374, 1379 (9th Cir. 1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976), *citing United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

■ Appellant's final contention is that his sister did not voluntarily consent to the search of the bedroom in which the incriminating money straps were discovered and seized.

> [T]he question whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854 (1973). The district judge's implicit finding, in his denial of appellant's motion to suppress, that Jessie Bethea's consent to the search was voluntarily given, ". . . is binding on us unless clearly erroneous." *United States v. Peterson*, 524 F.2d 167, 178 (4th Cir. 1976), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976).

Admittedly, certain factors lend support to appellant's contention that his sister did not freely consent to the police search. She was a young woman—seventeen years old at the time of the search—who was scantily dressed when several male police officers entered her home. She testified that she was frightened by the officers' presence in her home and embarrassed by her apparel.

Viewing the totality of the circumstances, as adduced from the testimony at the suppression hearing, however, this court cannot conclude that the trial judge clearly erred in finding that Jessie Bethea voluntarily consented to the bedroom search. Ms. Bethea lead the police officers from the first floor living room to a second floor bedroom and pointed to the bedroom as the room in

---

2. At the suppression hearing, in connection with another issue, appellant's attorney contended that Jessie Bethea had the "requisite common authority" to consent to a search of the entire house.

which her brother, appellant, had been staying. One of the officers asked her if he could search the room, and she stated that he could. The officer thereafter informed her of her right to refuse permission to search, and her response was, as heretofore indicated, "You can search, and I will help you." Ms. Bethea thereupon proceeded to help the police search the bedroom.

Nor was there any evidence that the consent was a result of duress or coercion. The evidence shows that the officers treated Ms. Bethea with courtesy, and the record is devoid of any reference to force being used either upon Ms. Bethea or upon her brother in her presence. The evidence, rather, supports the finding that Jessie Bethea voluntarily consented to the search.

Finding appellant's claims of error to be without merit, we affirm the judgments of conviction.

*AFFIRMED.*