**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raymond LOPEZ–DIAZ,**
**Defendant–Appellant.**

**No. 79–1437.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 12, 1979.

Decided Aug. 8, 1980.

662

· Stuart I. Teicher, Portland, Or., for defendant–appellant.

Kenneth C. Bauman, Asst. U. S. Atty., Portland, Or., for plaintiff–appellee.

Before KILKENNY and CHOY, Circuit Judges, and GRANT,* District Judge.

CHOY, Circuit Judge:

Raymond Lopez–Diaz appeals from his conviction of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a), 18 U.S.C. § 2. He contends that incriminating

* Honorable Robert A. Grant, Senior U. S. District Judge for the Northern District of Indiana, sitting by designation.

statements made after his arrest were elicited in violation of his *Miranda* rights. We reverse.

## I. STATEMENT OF FACTS

On December 21, 1978, an unidentified informant told Special Agent Van Horn of the Drug Enforcement Administration (DEA) that Ralph Cawley would be returning to Salem, Oregon, in possession of heroin. Van Horn asked Detectives Wan and Weber of the Marion County Sheriff's Office to maintain surveillance of Cawley's house and to search his van upon its arrival.

Cawley arrived in Salem at 1:40 a. m. on December 22, accompanied by appellant Lopez–Diaz. Detectives Wan and Weber frisked and handcuffed them and read them their *Miranda* rights from a prepared card. Cawley consented to a search of the van which belonged to his wife. In the back of the van, Wan found two pillow cases, one inserted inside the other. The inner pillow case contained Lopez–Diaz's personal belongings. Between the two cases Wan discovered a ball of tin foil containing packets of heroin and cocaine.

At approximately 2:00 a. m., Agent Olson of the DEA arrived and placed Lopez–Diaz and Cawley under arrest. He recited the *Miranda* warnings from memory, erroneously asserting the right to remain silent was contingent upon requesting counsel.

Lopez–Diaz was then taken to the sheriff's office. Detective Weber again read him his *Miranda* rights from a prepared card, which Lopez–Diaz signed with a fictitious name. Weber questioned Lopez–Diaz briefly. Agent Olson then took over the questioning and asked Lopez–Diaz if he wanted to tell the true story about the drugs found in the van. Lopez–Diaz stated that he did not want to talk about the drugs in the van, but that he would be willing to talk about other illegal drug activity and drug dealers. He proceeded to do so.

At the end of the conversation, Agent Olson asked if everything Lopez–Diaz had told him was the truth, stating that it was important that Lopez–Diaz tell the truth if

they were going to discuss anything. Lopez–Diaz revealed that he had given Olson a fictitious name and that he was an escapee from federal prison. Olson then asked whether there were any other drugs in the van. Lopez–Diaz responded, "No just the one piece of heroin and three pieces of cocaine and some cut."

Lopez–Diaz moved to suppress his statements on the ground that they were taken in violation of his *Miranda* rights. He also moved to suppress the cocaine on the ground that, notwithstanding Cawley's consent to search the van, a warrant was required to search the pillow cases. The district court denied both motions and found Lopez–Diaz guilty.

## II. DISCUSSION

### A. Lopez–Diaz's Miranda Rights

■ *Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966), requires that a person subject to custodial interrogation be advised in clear and unequivocal language of, *inter alia,* his right to remain silent. If a person indicates in any manner the desire to exercise that right, the interrogation must cease. *Id.* at 473–74, 86 S.Ct. at 1627.

### 1. Adequacy of the Miranda Warnings

Lopez–Diaz contends that because the second of the three warnings given to him erroneously conditioned his right to remain silent upon his requesting counsel, he was deprived of the opportunity knowingly and intelligently to exercise his right not to incriminate himself.

■ A defective *Miranda* warning does not necessarily require reversal of a conviction. *See United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *Maguire v. United States,* 396 F.2d 327 (9th Cir. 1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969). In *Maguire,* we held that where an adequate *Miranda* warning was given by a police officer three days before a second

officer interrogated the defendant, "even if the warning given by [the second officer] was insufficient, the appellant could not claim he had *not* been apprised of the *Miranda* warnings." 396 F.2d at 331 (emphasis in original).

In *Pheaster*, we held that even an inaccurate warning may be sufficient if there is direct evidence that the defendant was aware of his rights. The police officer in *Pheaster* failed to advise the defendant of his right to have counsel present during questioning. However, the defendant stated that he knew his rights and repeatedly demanded an attorney. Under these circumstances, we refused to find a *Miranda* violation. 544 F.2d at 366.

■ Here, Lopez–Diaz was accurately apprised of his *Miranda* rights on two occasions—both before and after the defective warning was given. This is not a case where the defendant never received a full and complete *Miranda* warning before making inculpatory statements, as in, *e. g.*, *United States v. Garcia*, 431 F.2d 134 (9th Cir. 1970). Moreover, it is apparent from Lopez–Diaz's selective refusal to talk about the drugs in the van that he understood his right to remain silent was not contingent on his requesting counsel.

Thus, even though the second of the three warnings given to Lopez–Diaz was inaccurate, he was adequately apprised of his *Miranda* rights.

2. *The Right to Remain Silent*

Lopez–Diaz contends that the incriminating statements about the drugs in the van that were elicited from him after he had invoked his right to remain silent on that subject were inadmissible. We agree.

■ Under *Miranda*, once a person in custody indicates "that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. at 1627. The Supreme Court has rejected a literal interpretation of *Miranda*, however, holding that the exercise of the right to remain silent does not preclude all further questioning. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Statements obtained after an initial exercise of the right to remain silent are admissible where the individual's "right to cut off questioning" has been "scrupulously honored." *Id.* at 104–07, 96 S.Ct. at 326–328.

In *Mosley*, after being fully advised of his rights, the defendant stated that he did not wish to discuss the offense for which he was being held. The police "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been the subject of the earlier interrogation." *Id.* at 105–06, 96 S.Ct. at 327. The Court held that statements made during the second interrogation were admissible.

■ Lopez–Diaz's invocation of his right to remain silent, on the other hand, was not "scrupulously honored." Lopez–Diaz said that he did not want to talk about the drugs in the van, but that he would be willing to provide other information. After a short conversation during which Lopez–Diaz revealed his true identity as an escaped prisoner,[1] he was asked about the drugs in the van. This question was on the very subject Lopez–Diaz had said he did not wish to discuss.[2] No significant period of time had elapsed, nor had fresh warnings been given.

1. Lopez–Diaz's statements about his escape from federal prison and his use of a fictitious name were in response to the officer's question whether information already volunteered by Lopez–Diaz was true. This question did not invade any area on which Lopez–Diaz indicated a desire to remain silent. Thus, the admission of these statements was unobjectionable.

2. A person in custody may selectively waive his right to remain silent by indicating that he will respond to some questions, but not to others. *United States v. Lorenzo*, 570 F.2d 294, 297-98 (9th Cir. 1978). Once a person has indicated that he does not wish to talk about a particular subject, all questioning *on that topic* must cease.

There is a critical distinction between, on the one hand, an inquiry for the limited purpose of clarifying whether the defendant is invoking his right to remain silent or has changed his mind regarding an earlier assertion of the right and, on the other hand, questioning aimed at eliciting incriminating statements concerning the very subject on which the defendant has invoked his right. *Compare United States v. Davis*, 527 F.2d 1110 (9th Cir. 1975) *cert. denied*, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 196 (1976), *with United States v. Barnes*, 432 F.2d 89 (9th Cir. 1970).

In *Davis*, we held that a defendant's confession was properly admitted into evidence where the defendant was initially asked only if he wanted to reconsider his decision to remain silent in light of photographic evidence clearly, implicating him in the crime. The questioning resumed only after the defendant signed a waiver and voluntarily agreed to talk. 527 F.2d at 1111.

By contrast, in *Barnes*, the defendants had specifically invoked the right to remain silent and refused to sign waivers. The authorities nonetheless confronted them with the confession of an accomplice and asked, "What about it, is this true or not?" The defendants then confessed. 432 F.2d at 91. We held that the confrontation and interrogation, "for the obvious purpose of getting defendants to abandon their self–imposed silence, were in flagrant violation of the rule as set forth in *Miranda*." *Id.*

The question to Lopez–Diaz was not merely for the limited purpose of determining whether he wanted to reconsider his decision to remain silent, as in *Davis*; it was, like the question in *Barnes*, for the obvious purpose of eliciting incriminating evidence. Thus, the question violated *Miranda*.

### 3. *Waiver of the Right to Remain Silent*

The Government contends that by voluntarily making other incriminating statements during the interrogation, Lopez–Diaz implicitly waived his right to remain silent about the drugs in the van.

■ Waiver may be inferred from the actions and words of the person interrogated, but "[t]he courts must presume that a defendant did not waive his rights; the prosecution's burden is great." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *accord, United States v. Rodriguez–Gastelum*, 569 F.2d 482, 488 (9th Cir. 1978) (en banc).

■ In this case, Lopez–Diaz said that he did not wish to talk about the drugs in the van. Even if, as the Government contends, Lopez–Diaz "led the conversation into the area of his own crimes rather than only the crimes of others," his statements that he ·was an escaped prisoner and that he had been lying about his identity did not implicitly waive his previously asserted right to remain silent regarding the drugs in the van.[3]

---

**3.** Judge Kilkenny believes the clearly erroneous standard applies to our review of the implied waiver question. He cites *United States v. Glover*, 596 F.2d 857, 865 (9th Cir. 1979), and *United States v. O'Looney*, 544 F.2d 385 (9th Cir. 1976). In *Glover*, the defendant signed a written waiver; the only issue was his competence to make a waiver. In *O'Looney*, the defendant signed a written statement admitting the crime; the issue was voluntariness. In neither case had the defendants at any point invoked the right to remain silent. Competence and voluntariness are obviously factual issues to which the clearly erroneous standard applies.

Here, the issue is whether a given set of facts constitutes an implied waiver. Therefore the clearly erroneous standard does not apply to our review of the district court's conclusion.

I believe my Brother Kilkenny's citation to *United States v. Bethea*, 598 F.2d 331, 333–34 (4th Cir. 1979), is inapposite. In *Bethea*, officers had broken into a house to execute a search warrant. The issue was whether the officers had requested and been refused entry before breaking in, as required by statute. The Fourth Circuit's rule requiring affirmance of the district court's finding if supported by "any reasonable view of the evidence, looked at in the light most favorable to the government" is clearly inapplicable to the implied waiver question in this case.

Such a rule would virtually nullify the appellate courts' power to ensure that a defendant's right to remain silent has been scrupulously honored under *Miranda* and *Mosley*. In almost every case where a defendant invokes his right to remain silent but thereafter responds with

## B. The Search and Seizure

Lopez–Diaz contends that the warrantless search and seizure of the pillow cases found in the van violated the fourth amendment.[4] Because this argument will likely be raised again if there is a retrial, we reach the issue.

A search and seizure conducted without a warrant is unreasonable unless it falls within certain limited exceptions. *E.g., Arkansas v. Sanders,* 442 U.S. 753, 758–60, 99 S.Ct. 2586, 2589–2591, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). One such exception is a consent search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973).

Cawley, in whose custody and control the van had been entrusted, had authority to consent, and did consent, to its search. *See, id.* at 220–22, 93 S.Ct. at 2044–45; *Burge v. United States,* 342 F.2d 408, 413 (9th Cir.), *cert. denied,* 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965). The voluntariness of his consent is not here challenged. The only question is whether Cawley's consent to search the van extended to the pillow cases in which the heroin and cocaine were found.[5]

■ Whether the search remained within the boundaries of the consent is a question of fact to be determined on the basis of the totality of the circumstances. The trial judge's factual findings will be overturned only if clearly erroneous. *United States v. Sierra–Hernandez,* 581 F.2d 760, 764 (9th Cir.),*cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978).

■ We hold that the district court did not clearly err in determining that Cawley's consent extended to the pillow cases. *See United States v. Matlock,* 415 U.S. 164, 169–171, 94 S.Ct. 988, 992–993, 39 L.Ed.2d 242 (1974). There was nothing to indicate that the pillow cases did not belong to Cawley. It was not obvious that the searched item was the exclusive property of Lopez–Diaz. *See United States v. Isom,* 588 F.2d 858, 861 (2nd Cir. 1978).[6] Furthermore, neither Cawley nor Lopez–Diaz objected to the

incriminating answers to specific questions, it would be difficult to characterize a conclusion of implied waiver as unsupported by any reasonable view of the evidence, looked at in the light most favorable to the government. This approach would make a district court's conclusion of implied waiver virtually unappealable.

4. We assume without deciding that Lopez–Diaz has standing to challenge the search of the pillow cases. *Compare Jones v. United States,* 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960) ("automatic standing" rule for possessory offenses), *with Rakas v. Illinois,* 439 U.S. 128, 135 & n.4, 99 S.Ct. 421, 427 & n.4, 58 L.Ed.2d 387 (1978) (automatic standing rule may not be viable). *See* Arguments Before the [U.S. Supreme] Court [on *United States v. Salvucci,* No. 79–244, and *Rawlings v. Kentucky,* No. 79–5146], 48 U.S.L.W. 3705 (May 6, 1980) (re viability of automatic standing rule).

5. The Supreme Court has held that the *automobile exception* to the warrant requirement does not validate the warrantless search of personal luggage. *Arkansas v. Sanders,* 442 U.S. 753, 757-66, 99 S.Ct. 2586, 2589–2594, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 11–13, 97 S.Ct. 2476, 2483–2484, 53 L.Ed.2d 538 (1977); *see United States v. MacKay,* 606 F.2d 264, 265–66 (9th Cir. 1979). Neither *Chadwick* nor *Sanders* dealt with the situation presented in the instant case, *i.e.,* where

the police obtained *consent* to search the vehicle.

Because we rest our decision on the question of consent, we do not reach the question whether the pillow cases here were the "personal luggage" of Lopez–Diaz for the purposes of *Chadwick* and *Sanders.* Nor do we decide whether a pillow case carries with it a lesser expectation of privacy than a backpack or a suitcase whose very purpose "is to serve as a repository for personal items when one wants to transport them." *Arkansas v. Sanders,* 442 U.S. at 764, 99 S.Ct. at 2593. For a thorough discussion of the relevant considerations involved in this issue, *see United States v. Ross,* No. 79–1624 (D.C. Cir. April 17, 1980) (majority and dissenting opinions).

6. In *Isom,* the Second Circuit noted that the justifiable expectation of privacy guests have in the contents of locked articles they bring to a host's premises should not be vitiated by a strained application of the third-party consent doctrine where it is obvious that the item is the exclusive property of the guest. In such situations, the consent of the host is ordinarily insufficient to justify a warrantless search of the item; under *Chadwick* the police must first obtain a warrant. 588 F.2d at 861.

search of the pillow cases. *See id.; United States v. Sierra–Hernandez,* 581 F.2d at 764.

Under these circumstances, the police might reasonably conclude that Cawley's consent included within its scope the pillow cases. Therefore, Lopez–Diaz's motion to suppress the evidence found inside the pillow cases was properly denied.

## III. CONCLUSION

By questioning Lopez–Diaz on a subject he specifically wished foreclosed from interrogation, the police did not "scrupulously honor" Lopez–Diaz's right to remain silent. The admission of the incriminating response to this question was clearly prejudicial.[7]

REVERSED AND REMANDED.

KILKENNY, Senior Circuit Judge, dissenting:

The central issue in this appeal is whether appellant, while aware of his *Miranda* rights, knowingly, intelligently, and voluntarily waived those rights. Fully recognizing that the government bears a heavy burden in demonstrating that appellant waived his rights, *United States v. Pheaster,* 544 F.2d 353, 368 (CA9 1976), *cert. denied* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), I also recognize that a trial court's finding of such a waiver must not be overturned unless clearly erroneous, e.g., *United*

*States v. Glover,* 596 F.2d 857, 865 (CA9 1979), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 80; *United States v. O'Looney,* 544 F.2d 385 (CA9 1976), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625.[1] Because I do not find clear error in the district court's decision, I dissent.[2]

On two occasions, law enforcement officers read appellant's *Miranda* rights to him from prepared cards. In part, the cards read:

"It is my duty to warn you before you make any statement that:

1. You have a right to remain absolutely silent.

2. Anything you do say can and will be used against you in a Court of law.

3. You have a right to consult an attorney before making any statement.

4. If you are without funds you have a right to a Court appointed attorney at public expense.

5. You have the right to have an attorney present when and if you do make any statement.

6. *You have the right to interrupt the conversation at any time.*

7. *Anything you do say must be freely and voluntarily said.*" [Emphasis supplied.]

---

7. Because these statements provided direct evidence of Lopez–Diaz's knowledge of the drugs in the van and strongly implied his possession thereof, this error cannot be characterized as harmless.

1. The clearly erroneous rule governs the review of an order of the district court denying a motion to suppress even where the district court makes no express findings, but simply denies the motion. "[T]he result will be upheld on appeal if any reasonable view of the evidence, looked at in the light most favorable to the government, will sustain the denial." *United States v. Bethea,* 598 F.2d 331, 333–34 (CA4 1979), *cert. denied* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81. The majority cite no authority to the effect that the clearly erroneous standard does not apply to a review of a determination of a waiver of *Miranda* rights. I agree that the "scrupulously honored" test applies to a determination of whether a person's *Miranda* rights were honored. Nevertheless, the rule in this

circuit is that the district court's resolution of that question and a finding of waiver, like all factual determinations on suppression motions, must be upheld unless clearly erroneous. *E.g., United States v. Post,* 607 F.2d 847, 849 (CA9 1979); *United States v. Martin,* 587 F.2d 31, 33 (CA9 1978), *cert. denied* 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459; *United States v. Wysong,* 528 F.2d 345, 348 (CA9 1976).

2. The recent Supreme Court decision in *Rhode Island v. Innis,* —— U.S. ——, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), does not change my analysis. In *Innis* the question was whether there was an "interrogation." Here, the question is whether there was a knowing, intelligent, and voluntary waiver of *Miranda* rights. Since *Innis,* the majority's distinction between presenting a suspect with evidence in order to elicit incriminating statements and questioning of a suspect is no longer valid.

There is no question that these warnings accurately advised appellant of his rights, nor is there any question that appellant fully understood his rights.[3]

It is well settled that, in appropriate circumstances, a waiver of *Miranda* rights may be implied from conduct, and that an express waiver is not required before statements are admissible. *Pheaster, supra,* at 368; *United States v. Rodriguez–Gastelum,* 569 F.2d 482 (CA9 1978), *cert. denied* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760. I conclude appellant waived his right to interrupt the conversation and freely and voluntarily made the statement in issue.

After being fully informed of his rights and demonstrating that he understood those rights by limiting the questioning, appellant spoke extensively about drug transactions, and drug dealers. When reminded that it is important to tell the truth, appellant freely revealed that he had signed the *Miranda* warning card with a fictitious name and that he was an escapee from a federal prison. Only then, when it became quite clear that appellant was ready and willing to tell everything and that he had waived his *Miranda* rights, was he asked about the possibility of other drugs in the van. In place of exercising his right to cut off questioning, a right he fully understood, appellant volunteered the statement in issue. If there is a case where the application of the doctrine of implied waiver is appropriate, this is it.

The facts before us support a finding of a waiver as much as those before the court in *Pheaster, supra.* There, the defendant *twice* made explicit demands for an attorney and was told that one would be provided when he appeared before a magistrate after his booking at the county jail. Needless to say, courts view an alleged waiver of *Miranda* rights after explicit demands for counsel with much skepticism, e.g., *Brewer v. Williams,* 430 U.S. 387, 405 n.10, 97 S.Ct. 1232, 1243 n.10, 51 L.Ed.2d 424 (1977). The agents continued the conversation with the defendant during the trip to jail, a journey that eventually lasted nine hours and did not end until 3:00 A.M. Nevertheless, the *Pheaster* court upheld a finding of a waiver. Of special significance to this court is the *Pheaster* court's acknowledgment of "the willingness to import a greater degree of flexibility and realism in the application of *Miranda,* which has recently been evidenced in the decision of the Supreme Court in *Mosley* and the decision of this Court in *Davis.*" *Pheaster, supra,* at 368.

In *United States v. Davis,* 527 F.2d 1110 (CA9 1975), *cert. denied* 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 196 (1976), the defendant indicated he did not want to talk. Nevertheless, an FBI agent showed the defendant a picture taken of him during a bank robbery and asked, "Are you sure you don't want to reconsider?" Whereupon, the defendant volunteered, "Well, I guess you've got me." He then signed a waiver form and gave a full confession. The *Davis* court observed that "[T]he right to talk or remain silent is the defendant's, and no mechanical application of *Miranda* should prevent the informed, voluntary, and free exercise of that right. *Davis, supra,* at 1111. The court considered it important that there was no evidence of any psychological or physical pressure on Davis, or of overreaching of any kind. Similarly, there is no evidence of improper psychological or physical pressure or of overreaching before us. To the contrary, every fact points to one conclusion; appellant was fully informed of his rights, he understood his rights, and he determined that it was in his best interests to talk with the officers in the hope of securing lenient treatment. There is absolutely nothing in the record to indicate that the officers acted improperly.

The majority relies heavily on *United States v. Barnes,* 432 F.2d 89 (CA9 1970), where this court held that the defendants' *Miranda* rights were violated. But the facts in *Barnes* bear no relation to those before us. In *Barnes,* one of the defendants positively stated twice that he did not

---

**3.** The card signed by appellant acknowledging that he understood his rights is missing from the record. However, the testimony on its admission is undisputed and appellant has not contested that he signed the card.

want to answer any questions, and the other absolutely refused to talk to the authorities. In the face of these clear and unequivocal assertions of *Miranda* rights, the law officers brought an accomplice, who had confessed, into the same room with the other defendants and had the accomplice reiterate her confession before the defendants. The officers admitted that the purpose of their actions was to have the defendants confirm or deny the accomplice's story. After the accomplice's confession the defendants were asked, "What about it, is this true of not?" The defendants then confessed.

Small wonder that the *Barnes* court had no difficulty in finding a violation of the rules established in *Miranda.* Both defendants had positively asserted their rights to remain absolutely silent. Nevertheless, the officers continued the pressure by bringing in an accomplice for the purpose of securing confessions. In contrast, appellant, by his own choice, continued the conversation with the agents. Most importantly, in *Barnes* there was absolutely no evidence of a waiver of rights. Here, it is obvious from appellant's conduct that he waived his rights. During the conversation with the officers, he decided that he might be able to secure lenient treatment or some other advantage by fully cooperating with the agents. This led to his confession regarding his fugitive status and his use of a fictitious name. It was eminently reasonable for the agents to conclude that he had waived his *Miranda* rights. Even if this court disagrees on whether the waiver was obvious, it is still bound to affirm unless the district court's decision was clearly erroneous. Without doubt, there is sufficient evidence to support that court's decision.

The majority emphasizes the lack of intervention of time between appellant's statement that he would discuss other drugs and drug dealers and the agent's question about the possibility of more drugs in the van. That lack of intervention of time between the assertion of a right and the waiver of the right is not the controlling factor in determining whether the waiver is valid, was recognized in *Rodriguez–Gastelum,*

where an implied waiver of *Miranda* rights was upheld, even though the defendant had explicitly asserted his right to counsel a short time before in the same conversation, and by Justice White's concurring in *Michigan v. Mosley,* 423 U.S. 96, 107, 96 S.Ct. 321, 328, 46 L.Ed.2d 313 (1975). Here, appellant freely and voluntarily talked about other drugs and drug dealers and when finished with that subject, was reminded that it was important to tell the truth before anything could be discussed. This brought forth entirely different matters of an incriminating nature. If a waiver can be found in *Rodriguez–Gastelum,* it must be found here.

Each case must depend on the specific facts presented to the court. This court has specifically rejected a rule which would require, as proof of a waiver, that the accused initiated the waiver. *Rodriguez–Gastelum, supra,* at 488. The facts before us do not present a case where the police failed to honor a decision by a person in custody to terminate the conversation or brought improper pressure to bear on the person to secure incriminating statements. To the contrary, the agents complied with appellant's limitations on the discussion and only returned to the question of the drugs in the van after appellant had freely indicated he was waiving his *Miranda* rights. The majority approves a mechanical application of *Miranda* which is not justified under the facts of this case.

## CONCLUSION

The decision of the trial court was not clearly erroneous. That court had an opportunity to see and hear the witnesses and to judge whether appellant knowingly, intelligently, and voluntarily waived his *right to interrupt the conversation and remain silent.* The trial judge, rather than us, has the primary responsibility of deciding whether the government met its heavy burden of showing that appellant's waiver was valid under the particular facts of this case. There is nothing in the record to indicate that the appellant's right to cut off questioning was not "scrupulously honored,"

and I see no reason for disturbing the district court's decision.