908 F.2d 974
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mohammed V. ATTAR, Defendant-Appellant
 No. 89-5659.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1990.
 
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and AVERN COHN, District Judge*
 PER CURIAM.
 
 
 1
 This is a search and seizure case. Appellant, Mohammed V. Attar, appeals a district court's order denying his motion to suppress evidence seized during a warrantless search of his truck. The district court held that defendant validly consented to the search. Attar contends that the officers who searched the truck did so without his permission, based their authority to search on the consent of a third party whom they knew not to be the owner, and exceeded the bounds of the consent they claimed to have received. Because the district court's finding that the officers had valid third party consent to search the truck was not clearly erroneous, the order will be affirmed.
 
 I.
 
 2
 On October 18, 1988, Attar and two companions, Joseph Carpenter (Carpenter) and Christos Fasnakis (Fasnakis), were driving his 24-foot Ford truck through Tennessee on their way from West Palm Beach to Detroit. Just outside Chattanooga, they encountered a road sign declaring "All Trucks Must Stop for Inspection." After a brief discussion, Carpenter, who was driving, pulled the truck into the designated rest area. Tennessee Public Service Commission (TPSC) Officer Michael McKenzie (McKenzie) approached the cab and asked to see his logbook, bill of lading, and medical card. Carpenter replied that he did not know what any of those things were. McKenzie asked Carpenter what they were hauling and Carpenter did not know. Attar told McKenzie that they were hauling an ice chest. McKenzie then asked Carpenter whether he could look in the back of the truck. Carpenter agreed and opened up the back door. Attar made no protest.
 
 
 3
 In the back of the truck there was a Toyota pickup truck, two styrofoam coolers, and a chest-type freezer, as well as some miscellaneous electrical equipment and luggage. McKenzie also saw several empty beer bottles on the floor. It is a violation of TPSC rules for a a truck to transport alocholic beverages if they are not on the bill of lading. TPSC Rule 2-120, adopting the Federal Motor Carriers Safety Regulation 395.5, 49 C.F.R. Sec. 392.5 (1986). McKenzie asked Carpenter whether there was any more beer in the coolers and he replied that there was. McKenzie looked in one of the coolers and found half a case of beer. He found nothing in the second. In the freezer he discovered two tupperware containers covered in plastic and wrapped in duct tape. McKenzie asked anyone knew what was in the containers but all three men denied ownership He pierced the container with his knife and found a white powdery substance which later proved to be cocaine.
 
 
 4
 Attar was charged with unlawful possession of cocaine hydrochloride in violation of 21 U.S.C. Sec. 841(a)(1). He filed a motion to suppress the evidence as the fruit of an illegal warrantless search. The government argued that the cocaine was lawfully seized in the course of a legitimate safety inspection. Following an evidentiary hearing, the district court denied the motion. The district court held that the administrative scheme under which the search was conducted was constitutionally defective under New York v. Burger, 482 U.S. 691 (1987), because it delegated unbridled discretion to individual TPSC Officers to decide whether and under what circumstances detained vehicles would be searched. However, the district court also found that Attar had consented to the search because he failed to object when Carpenter opened the truck or when McKenzie asked to search the coolers. Attar appeals from this order.[1]
 
 II.
 
 5
 Ordinarily, a warrantless search without probable cause will be held to violate the Fourth and Fourteenth Amendments. Arkansas v. Sanders, 442 U.S. 753, 758 (1979). However the warrant requirement may be excused when a person having actual or apparent control over the things to be searched knowingly and voluntarily consents. United States v. Matlock, 415 U.S. 164, 165 (1974). Whether consent to a search was truly voluntary "is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). It may not be the product of duress or coercion, express or implied. Id. at 249. In order to determine whether consent to a search was voluntary, courts should consider factors such as the age, intelligence, and education of the subject, the length and intensity of the questioning, any physical punishment, and the subject's awareness of his constitutional rights. Id. at 226; United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988). However, the mere fact that the subject was not specifically advised of his right to refuse consent is not dispositive of the question of voluntariness. Schneckloth, 412 U.S. at 231-35. The government has the burden of proving that consent was voluntarily given. Id. at 222.
 
 
 6
 In its capacity as finder of fact, the district court found that Attar had voluntarily consented to the search of the truck. The district court also held that even if Attar had not personally consented, Carpenter's permission was sufficient because he had apparent authority to consent to the search. The Court need not reach the question of whether mere silence can constitute implied consent to a search because it is clear that Carpenter had apparent authority to consent.
 
 
 7
 In United States v. Matlock, the Supreme Court held that permission to conduct a warrantless search may be given not only by the owner of the property, but also by "a third party who possessed common authority over or other sufficient relationship to the premises or effects to be inspected." 415 U.S. at 171. This right derives not from any property interest the third party may have in the property,
 
 
 8
 but rests rather on mutual use of the property by persons having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
 
 
 9
 Id. at 172 n. 7. Under the Matlock test, the driver of an automobile generally has apparent authority to consent to a search of the vehicle. United States v. Morales, 861 F.2d 396, 399-400 (3d Cir.1988); United States v. Varona-Algos, 819 F.2d 81, 83 (5th Cir.), cert. denied, 484 U.S. 929 (1987). The driver has immediate possession and control over the vehicle and ordinarily has access to all internal and external compartments. Under those circumstances, it is reasonable to assume that he has authority to consent to a search. Even if it turns out for some reason that the driver did not have actual authority to consent, the fruits of the search need not necessarily be suppressed. "[A] search is not invalidated where a police officer in good faith relies on what reasonably, if mistakenly appears to be a third-party's authority to consent to the search." United States v. Sledge, 650 F.2d 1075, 1080-81 (9th Cir.1981). See also United States v. Miller, 800 F.2d 129, 133-34 (7th Cir.1986); United States v. Hamilton, 792 F.2d 837, 842 (9th Cir.1986). Thus, a driver of an automobile is presumed to have authority to consent to a search of the vehicle unless facts come to the inspecting officer's attention which would suggest that the driver's consent is invalid. See, e.g., United States v. Pardon, 657 F.Supp. 840, 846-48 (D.Del.1987), aff'd. without opinion, 857 F.2d 1466 (3d Cir.), cert. denied, --- U.S. ----, 102 L.Ed.2d 547 (1988). See also United States v. Impink, 728 F.2d 1228, 1234 (9th Cir.1984).
 
 
 10
 In this case, the district court found that at the time of the search, Carpenter was driving the truck and had control of the keys to the ignition and the back door. The truck was registered to Metro Import-Export, Inc., a trading corporation that Attar had formed. There was conflicting testimony as to whether McKenzie specifically asked or was told who owned the truck. Although Attar and McKenzie both testified that McKenzie was told that the truck was Attar's, Carpenter testified that there was no discussion of ownership prior to the search. In weighing the conflicting testimony, we cannot say that the district court's acceptance of Carpenter's testimony was clearly erroneous. United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988); United States v, Scott, 578 F.2d 1186, 1189 (6th Cir.), cert. denied, 439 U.S. 870 (1978).
 
 
 11
 Attar makes several additional arguments attacking the district judge's ruling, none of which are particularly persuasive. He first argues that the sign "All Vehicles Must Stop for Inspection" constitutes an affirmative representation of lawful authority to search which would negate any assumption by the subjects that they had the right to refuse. Bumper v. North Carolina, 391 U.S. 543 (1968). Certainly, the content and the tone of the sign were factors to be considered in making an overall determination of voluntariness. We are satisfied that the district court adequately took that into account. The Court does not agree that the sign was the functional equivalent of the invalid warrant at issue in United States v. Thompson, 612 F.2d 233 (6th Cir.1979), as Attar contends. Rather, it was merely a generalized shorthand to quickly alert passing truck drivers of an impending regulatory stop. The sign's message was simply too general and brief to be in any way analogous to a search warrant purportedly containing a declaration of probable cause and listing with specificity the places to be searched and the items to be seized.
 
 
 12
 Next Attar claims that even if Carpenter's initial permission to search was valid, the TPSC officers proceeded to exceed the scope of that consent by intruding into closed containers whose ownership was undetermined. Whether a search exceeds the consent given is a question of fact to be determined from the totality of the circumstances. Again, the district court's factual finding on this point will only be set aside if clearly erroneous. Numerous cases have noted that a suspect's failure to object or otherwise express concern during a search of his person or property strongly suggests that the scope of the search was within the bounds of the consent given. United States v. Espinoza, 782 F.2d 888, 892-93 (10th Cir.1986); United States v. Lopez-Diaz, 630 F.2d 661, 666-67 (9th Cir.1980); United States v. Sierra-Hernandez, 581 F.2d 760, 764 (9th Cir.), cert. denied, 439 U.S. 936 (1978); United States v. Miller, 491 F.2d 638, 649-51 (5th Cir.), reh. denied, 493 F.2d 664, cert. denied, 419 U.S. 970 (1974). Accordingly, we find this argument without merit.
 
 
 13
 Finally, Attar argues that because the regulatory stop pursuant to which the truck was detained was held to be unconstitutional, any evidence which was discovered as a result must be suppressed. Attar fails to distinguish, however, between a regulatory stop and an ensuing search. The district court held that the TPSC's administrative search scheme was unconstitutional because it vested excessive discretion in its officers to decide which vehicles to search or how such searches were to be conducted. However, nothing in the district court's opinion questioned a state's right to maintain safety inspection stations along its highways and to stop all vehicles of a certain class for inspection. Indeed, these types of checkpoints were expressly approved by the Supreme Court in Delaware v. Prouse, 440 U.S. 648, 663 n. 26 (1979). Regardless of the legality of the administrative search in this case, it is clear that the stop itself was untainted. Thus evidence uncovered during a subsequent search justified on independent grounds need not be suppressed.
 
 III.
 
 14
 Accordingly, the order of the district court is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The government has not appealed the district court's finding that the administrative search was invalid