OPINION
{¶ 1} This is an appeal from the Lake County Court of Common Pleas, Juvenile Division. Appellant, the state of Ohio, appeals from the trial court's February 25, 2002 judgment entry granting the motion to suppress of appellee, Joshua A. Gurley.
 {¶ 2} On March 28, 2001, a complaint was filed by the Mentor Police Department against appellee, age thirteen, alleging that he was a delinquent child by way of committing two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which were felonies of the third degree if committed by an adult. On May 18, 2001, appellee filed a motion to suppress. A hearing on the motion was held before a magistrate on August 1, 2001.
 {¶ 3} Detective Colleen Petro ("Detective Petro") of the Mentor Police Department was the only witness to testify at the suppression hearing. She related that she interviewed appellee on March 9, 2001. Detective Petro stated that she was familiar with appellee because she had spoken to him on a prior occasion as a result of a previous investigation on an unrelated matter. Appellee's stepfather made arrangements to bring appellee in to meet with Detective Petro. Detective Petro had a brief conversation with appellee's stepfather, who did not express any desire not to have appellee interviewed. Therefore, Detective Petro took appellee to the interview room and Mirandized him. He stated that he understood his rights and indicated that "he watches a lot of cop shows *** [and] knows what the Miranda warnings are." According to Detective Petro, appellee did not indicate that he did not wish to speak with her. Detective Petro also revealed that she was aware that appellee had a learning disability and was in special education classes. Yet, she stated that the first time she spoke with appellee, his mother informed her that he was "a very bright individual *** was gifted *** [and] talented in his writing, literature, computers and sciences ***."
 {¶ 4} As Detective Petro began discussing the allegations, she noticed appellee "took a defeated posture and became nervous and tried to turn a way from [her] to create more distance between [the two of them]." Detective Petro stated that appellee went toward the wall. Yet, she did not feel appellee was trying to exercise his right to remain silent. Instead, she "thought it was a sensitive issue for him and it might take a little time for him to collect his thoughts and answer." However, appellee did not ask her to stop the questions, nor did he tell her he wanted to leave the interview room. Further, Detective Petro did not ask appellee if he was exercising his right to remain silent because she did not feel it was necessary at that point. Detective Petro explained that appellee "could have" been exercising his right to remain silent by turning his back to her. She indicated that there was not a time during the questioning that she threatened or mistreated him. Detective Petro indicated that she and appellee continued to talk. However, when she approached a certain subject regarding the vagina, appellee informed her that he did not want to talk about that matter, but she told him that the topic was very important, and she wanted to be sure she understood what happened. Detective Petro mentioned that the interview lasted about twenty minutes.
 {¶ 5} On cross-examination, Detective Petro admitted that she was made aware that appellee had an attorney through his stepfather, but she did not ask who his attorney was since the matter on which she was questioning appellee was a separate investigation. She explained that she did not "need to know who his attorney was or tell him that he [had] to call him."
 {¶ 6} On August 13, 2001, appellee filed a supplement to his motion to suppress. On October 31, 2001, the magistrate granted appellee's motion to suppress and stated that "[b]ecause the alleged delinquent was 13 years old, severely emotionally disabled, in special education, afflicted with attention deficit disorder, already had an attorney representing him, said he didn't want to talk about the matter anymore, was only read his Miranda rights for two minutes, lacked sophistication with regard to the juvenile justice system and was accompanied by no one at the time of the interview, the statement was made under duress and he never knowingly, intelligently or voluntarily waived his Miranda rights." The state filed objections to the magistrate's decision, which the trial court overruled. In an entry dated February 25, 2002, the juvenile court adopted the magistrate's decision. It is from that entry that appellant timely filed the instant appeal, pursuant to Juv.R. 22(F), and assigns a single assignment of error:
 {¶ 7} "The [trial] court erred as a matter of law by granting [appellee's] motion to suppress."
 {¶ 8} Under its lone assignment of error, appellant claims that the trial court erred as a matter of law by granting appellee's motion to suppress.
 {¶ 9} At a hearing on a motion to suppress, a trial court, functioning as the trier of fact, is in the best position to evaluate the evidence, judge the credibility of the witnesses, and resolve the factual issues. State v. Mills (1992), 62 Ohio St.3d 357, 366. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford
(1994), 93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id.; see, also,State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002 WL 445056, at 3.
 {¶ 10} In Miranda v. Arizona (1966), 384 U.S. 436, 444, the United States Supreme Court held that statements stemming from custodial interrogations are admissible only if it is shown that the police officer gave the suspect certain prescribed warnings before commencing the custodial interrogation, and if the warnings were not given, the statements must be suppressed. The Miranda warnings given by a police officer must inform the suspect in clear and unequivocal terms that he has the right to remain silent. State v. Mack (1995), 73 Ohio St.3d 502,513, citing Miranda, 384 U.S. at 467-468. Further, "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege;any statement taken after the person invokes his privilege cannot beother than the product of compulsion, subtle or otherwise." (Emphasis added.) Miranda, supra, at 473-474.
 {¶ 11} Any statements obtained after an initial exercise of the right to remain silent are admissible only if the individual's right to cease questioning has been scrupulously honored. U.S. v. Lopez-Diaz
(1980), 630 F.2d 661, 664, citing Michigan v. Mosley (1975), 423 U.S. 96,103-104; State v. Eckliffe, 11th Dist. No. 2001-L-105, 2002-Ohio-7136, at ¶ 18-19. A defendant may selectively waive his Miranda rights by specifying that he will respond to some questions, but not others.Lopez-Diaz, 630 F.2d at 664, fn. 2. Once a person has indicated that he does not wish to talk about a particular subject, all questioning on that topic must cease. Id.
 {¶ 12} Furthermore, when the suspect is a juvenile and the court is seeking to determine if the juvenile's confession was involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; and the existence of physical deprivation or inducement. In re Watson
(1989), 47 Ohio St.3d 86, paragraph one of the syllabus. If the juvenile has already been informed of his right to an attorney and right to remain silent, the juvenile's parents or guardian do not have to be informed of these rights prior to any custodial interrogation in order for the juvenile's statements to be admissible at the juvenile's trial. Id. at 89. The state has the burden of proving, by a preponderance of the evidence, the voluntariness of an admission. State v. Gumm (1995),73 Ohio St.3d 413, 429.
 {¶ 13} On March 9, 2001, when Detective Petro questioned appellee, appellee was thirteen years old, was in special education classes and had a learning disability. Detective Petro testified that there was no mistreatment of appellee, and there was also no existence of a threat or inducement that would have compelled appellee to admit anything. However, there is no evidence in the record that Detective Petro carefully reviewed each right with appellee on the pre-interview form even though she stated that appellee verbally acknowledged that he understood his rights. Further, appellee did not initial or sign that he understood his rights. At the hearing, Detective Petro specifically testified that she verbally "told him his Miranda rights, and then before he supplied his written statement, *** he [needed] to go over that and initial it." Later, when she was asked if she had him sign something she replied, "no, I did not."
 {¶ 14} Moreover, Detective Petro testified that appellee turned away and walked toward the wall at some point during the questioning. Further, appellee stated that he did not want to talk about the matter which Detective Petro had approached during the interview. Thus, even though appellee did not expressly invoke his right to remain silent, his actions and comment that he did not want to discuss the matter anymore should have been honored. Instead, Detective Petro admitted that she continued questioning appellee. Based on the record before us and based on the totality of the circumstances, it is our view that appellee invoked his right to remain silent, but Detective Petro continued questioning him. Therefore, appellee's statement was not a voluntary confession; rather, it was a clear and unequivocal statement regarding the topic that appellee did not want to discuss with Detective Petro. Thus, we determine that there was competent, credible evidence to support the trial court's conclusion.
 {¶ 15} A literal interpretation of case law in this matter would suggest that because appellee invoked his Fifth Amendment privilege with Detective Petro by stating that he did not want to talk about that matter, any subsequent statement taken, under any circumstances, would be a violation of his Fifth Amendment rights. We also note that the Fifth Amendment should not only be applied to those defendants who choose the words necessary to invoke their constitutional right to silence carefully enough, but also to those defendants whose conduct and verbalization communicate the same message. Accordingly, after reviewing the record, we conclude that the totality of the circumstances demonstrate that appellee did not knowingly, intelligently, and voluntarily waive his rights.
 {¶ 16} For the foregoing reasons, appellant's lone assignment of error is not well-taken. Therefore, the judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.