**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Elzay DEPEW, Defendant–
Appellant.**

No. 92–30245.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1993.

Decided Nov. 4, 1993.

Joanne P. Rodriguez and Kim A. Lindquist, Asst. U.S. Attys., Boise, ID, for plaintiff-appellee.

James E. Siebe, Moscow, ID, for defendant-appellant.

Before: CANBY, and REINHARDT, Circuit Judges, and TASHIMA, District Judge.*

TASHIMA, District Judge:

Appellant Robert Elzay Depew was convicted of manufacturing marijuana, 21 U.S.C. §§ 841(a)(1) and 841(b), possession of a firearm in relation to a drug trafficking crime (the manufacture of marijuana), 18 U.S.C. § 924(c), and possession of an unregistered gun, 26 U.S.C. §§ 5861(d) and 5845(a)(5) & (e). Depew contends that the district court erred on several grounds, including the denial of his motion to suppress. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We conclude that the district court erred in denying the motion to suppress; accordingly, we reverse the conviction and remand.

## I

During the winter of 1990, the Idaho Department of Law Enforcement was engaged in an investigation of illegal marijuana production and sale. The primary subject was a Martin Levine. Interviews regarding Levine's operations led investigators to an individual by the name of Joseph Tajan. Tajan informed investigators that a man nicknamed "Pepe" had assisted Levine in establishing his marijuana growing operation.

Law enforcement officials discovered that Depew allegedly used the alias "Pepe" and had previously been convicted of manufacturing marijuana. Agents located Depew's residence, which was situated in a remote area. Depew chose this residence in part because he is a practicing nudist and desires privacy.

Without obtaining a warrant, Agent Tim Trout, pretending to be in car trouble and in need of a phone, left his car on the highway and entered Depew's property by crossing a ditch and clambering up a steep embankment. Depew's residence is separated from this highway by a 120–yard long, curved driveway. The view from the highway is blocked, except for a 60–foot stretch, by a row of thick, coniferous trees. Depew posted "No Trespassing" signs on his property; however, none were located at Trout's point of entry.

As Agent Trout walked up the driveway, Depew was returning from a trip into town. Agent Trout met Depew outside the garage in the driveway approximately six feet from the garage door and 50–60 feet from the house.[1] Because the house and garage are

---

* The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. The magistrate found that Agent Trout was fifteen feet from the house. This appears to be clearly erroneous. Depew testified at the suppression hearing that Agent Trout was sixty feet

at an elevation higher than that of the highway, this portion of the driveway is not readily visible from the road, even where vision is not obstructed by the coniferous trees. The driveway is separated from the house by a low picket fence attached to the corner of the detached garage. From this vantage point, Agent Trout detected the odor of growing marijuana emanating from the house. After being denied access to the house, Agent Trout left the premises and returned to his car parked on the highway below.

On January 18, 1991, agents obtained and executed a search warrant. The affidavit in support of the search warrant contained Agent Trout's belief that he smelled marijuana at Depew's residence, information regarding "Pepe" provided by Tajan, and evidence suggesting that Depew was "Pepe." Upon searching Depew's residence, agents seized unregistered firearms and in excess of 1,000 marijuana plants.

Depew moved to suppress the evidence found in his house, on the ground that the original, warrantless search by Agent Trout violated the Fourth Amendment. Because the results of that first entry were used to obtain the search warrant, Depew argued that the search of his house was tainted by the earlier violation.

## II

■ Depew contends that the district court erred in holding that his Fourth Amendment rights were not violated by Trout's warrantless search of his premises. Although the Fourth Amendment's protection is accorded only to "persons, houses, papers, and effects" and not to "open fields," the Fourth Amendment does protect the "curtilage" of a home. *Oliver v. United States,* 466 U.S. 170, 180–81, 104 S.Ct. 1735, 1742–43, 80 L.Ed.2d 214 (1984). The concept of curtilage "originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94

L.Ed.2d 326 (1987). Thus, whether Depew's Fourth Amendment rights were implicated turns on whether the area in which Trout smelled marijuana was part of the protected curtilage. The district court found that it was not.

### A.

■ The determination of whether an area is within the protected curtilage turns on four integral factors bearing on the relationship of that area to the home. *Id.* at 301, 107 S.Ct. at 1139. Curtilage questions should be resolved with particular reference to four factual inquiries: (1) the proximity to the home of the area claimed to be curtilage; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Id.*

■ Whether an area is within the protected curtilage of a home is thus an "essentially factual" inquiry. *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (*en banc*), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The district court's determination should, therefore, be reviewed under the clearly erroneous standard. *United States v. Traynor,* 990 F.2d 1153, 1156–57 (9th Cir.1993).

### B.

Every curtilage determination is distinctive and stands or falls on its own unique set of facts. In *Dunn,* the Supreme Court determined that a barn located 50 yards from a fence surrounding the house, used for the manufacture of controlled substances, and visible to observers, was not within the protected curtilage. *Dunn,* 480 U.S. at 302–05, 107 S.Ct. at 1140–42. That law enforcement officers had aerial photographs of the barn suggesting it was used for the manufacture of controlled substances was "especially significant" because it provided officers with *objective* data indicating "that the barn was

from the house, in front of the garage at the side away from the house. The nearer side of the garage was fifteen feet from the house. That

testimony was not contradicted. Agent Trout testified that he smelled marijuana 50 feet from the house.

not being used for intimate activities of the home." *Id.* at 302, 107 S.Ct. at 1140.

This Circuit recently held that an outbuilding 45 feet from a residence, segregated from that home by a fence, used only for a marijuana grow operation, and highly visible from open fields surrounding the property, was not within the curtilage of the home. *United States v. Brady*, 993 F.2d 177 (9th Cir.1993).

In *Traynor*, 990 F.2d at 1153, this Circuit held that there was no clear error in finding that an outlying shop, 70–75 feet from the house, devoted solely to the growing of marijuana, segregated from the residence by a fence, and visible to persons standing on adjacent property, was not within the protected curtilage.

### C.

■ The district court found that the area in which Trout smelled marijuana was not within the curtilage of Depew's home. However, as an analysis of the facts under the *Dunn* four-factor test, 480 U.S. at 301, 107 S.Ct. at 1139, demonstrates, it failed to accord sufficient weight to Depew's efforts to maintain his privacy and to Agent Trout's lack of objective data indicating that Depew's garage or driveway was not used for intimate activities of the house.

*First (proximity):*

While speaking with Depew, Agent Trout was standing outside the garage approximately six feet from the garage door and 50–60 feet from the house. Although this location was closer to the home than that in *Dunn*, *id.* at 297, 107 S.Ct. at 1137 (50 yards), and *Traynor*, 990 F.2d at 1158 (70–75 feet), it was no closer than the area found to be outside the curtilage in *Brady*, 993 F.2d at 178 (45 feet). A distance of 50–60 feet, therefore, clearly does not compel a finding of curtilage. There is not, however, any fixed distance at which curtilage ends. Sixty feet, in our view, is close enough to permit a finding of curtilage if other factors support

such a finding.[2] Nothing in *Brady* suggests otherwise.

*Second (enclosure):*

Depew's house and yard are partially surrounded by a low picket fence which is between the house and the area in which Agent Trout smelled marijuana. In *Traynor*, the court held that fencing partially surrounding a shop segregated that shop from Traynor's home. 990 F.2d at 1158; *see also Brady*, 993 F.2d at 178. However, the Supreme Court has declined to adopt the bright line rule that curtilage extends no further than the nearest fence surrounding a fenced house. *Dunn*, 480 U.S. at 301 n. 4, 107 S.Ct. at 1140 n. 4. Application of such a rule "might well lead to diminished Fourth Amendment protection in those cases where [an area] lying outside a home's enclosing fence was used for ... domestic activities." *Id.* Although a fence may have been located between Trout and the home, the area where Trout was standing was within the "specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." *Id.* at 302, 107 S.Ct. at 1140.

*Third (use):*

Depew was a practicing nudist and often walked around in the nude in the driveway outside the garage. Agent Trout had no *objective* data indicating that Depew used his garage or adjacent driveway area for illegal activity rather than for those activities associated with the privacies of domestic life. *See Dunn*, 480 U.S. at 302, 107 S.Ct. at 1140 (officers possessed aerial photographs suggesting that the barn was being used to manufacture drugs); *United States v. Calabrese*, 825 F.2d 1342, 1350 (9th Cir.1987) (prior search indicated that structure was being used to manufacture methamphetamine). A tip from an informant that "Pepe" aided Levine in launching his marijuana operation is not sufficient, standing alone, to imply that Depew was engaging in illegal activity at his home.

**2.** "[T]hese [curtilage] factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so inti-

mately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301, 107 S.Ct. at 1140.

*Fourth (steps taken to prevent observation):*

Depew chose the residence at issue because it was in a remote, secluded area. It was not visible from the highway below due to the long driveway, a row of thick trees blocking the view, and the lower elevation of the highway. Depew had a post office box in town and read his own meter so that no postal worker or meter reader came to his premises. Moreover, Depew posted "No Trespassing" signs on the property to prevent entry by others.[3]

The district court also disregarded the "No Trespassing" signs based upon the Supreme Court's observation that the law of trespass has "little or no relevance to the applicability of the Fourth Amendment." *Oliver,* 466 U.S. at 184, 104 S.Ct. at 1744. However, the Court indicated only that perfect congruence does not exist between trespassers and those who violate the Fourth Amendment; *i.e.,* an officer who trespasses is not necessarily conducting an illegal search. The posting of "No Trespassing" signs is significant in terms of constituting an effort to protect the inner areas of a parcel from observation. *See Dunn,* 480 U.S. at 301, 107 S.Ct. at 1139–40.

The district court also reasoned that the public had no indication that Depew was a nudist. However, it is irrelevant whether the public knows why an individual craves privacy. It is relevant simply that Depew's numerous efforts to ensure privacy were not in vain, as uninvited guests had never previously entered the property.

A careful analysis of the *Dunn* factors mandates the finding that the area in which Agent Trout smelled marijuana was within the curtilage of Depew's home. Therefore, we conclude that the district court clearly erred in finding that Agent Trout was not within the curtilage when he made his observations,[4] and, thus, in refusing to strike his

statements from the affidavit submitted in support of the search warrant.

## III.

■ Before a search warrant may issue, evidence must be submitted establishing probable cause that contraband or evidence of a crime will be found in the place to be searched. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

■ The affidavit, stripped of Agent Trout's statements, is clearly insufficient to establish probable cause that Depew was engaged in illegal activity. The remaining portions of the affidavit consist almost entirely of statements by the informant, Tajan. According to Tajan, Levine, the primary subject of investigation, reported that he was getting instruction in growing marijuana from an old friend nicknamed "Pepe." Levine revealed to Tajan that "Pepe" sold him 2 trays of starter plants and had 600 to 800 marijuana plants growing at all times. To support his marijuana operation, "Pepe" was allegedly stealing electricity to support his grow lights. Tajan had never met "Pepe" but believed he lived in the North Idaho area, drove a Chevrolet Blazer and was separated from his wife, who lived in Spokane, Washington.

Agents discovered that Depew had once been known as "Pepe" and had been arrested in Spokane County, Washington in 1983 for growing marijuana. Furthermore, Depew's electricity usage was low for that time of year, a Blazer had been registered in his name, and he was estranged from his wife,

---

3. The district court found that no sign was posted at the point where Agent Trout entered the property. However, this finding cannot be accorded much significance because Trout entered from an unusual location, *i.e.,* a location not usually traversed by foot traffic, by crossing a ditch and climbing up a steep embankment.

4. "Observations" include those matters perceived through the olfactory sense, as well as visual perceptions.

whose current vehicle registration bore a Spokane, Washington address.

Although these factors may suggest that Depew is "Pepe," the affidavit fails to provide sufficient evidence that "Pepe" and/or Depew was engaged in a crime *or* that evidence of illegal activity would be found at Depew's home. There is no showing that the affiant's information that "Pepe" was growing marijuana was reliable, *i.e.*, it is based on hearsay without a showing of the reliability of the hearsay source. It is not sufficiently reliable to establish probable cause. The affidavit, stricken of Agent Trout's illegal search, contains no corroboration of "Pepe's" alleged marijuana growing operation. *See United States v. Kerr*, 876 F.2d 1440, 1444 (9th Cir.1989) (degree of corroboration of informant's story significant to probable cause determination).

Absent Agent Trout's claim that he smelled marijuana, the affidavit is clearly insufficient to establish probable cause that evidence of a crime would be found at Depew's home. We therefore need not address Depew's further challenges to his conviction and sentence. The judgment of conviction is reversed and the case is remanded to the district court for further proceedings.

**REVERSED and REMANDED.**