35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steve R. TRELEAVEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven R. TRELEAVEN, Defendant,
and
Roderick D. HIER, Defendant-Appellant.
 Nos. 93-30227, 93-30228.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Sept. 13, 1994.
 
 Before: GOODWIN, D.W. NELSON, HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Codefendants Steve J. Treleaven and Roderick D. Hier appeal their conditional guilty plea convictions of conspiracy to manufacture marijuana, 21 U.S.C. Secs. 846, 841, and manufacturing marijuana. 21 U.S.C. Sec. 841. Treleaven and Hier each raise slightly different challenges to the district court's denial of their motion to suppress. We affirm.[1]
 
 
 3
 I. Request for a Franks Hearing on Agent Trout's Smell
 
 Testimony
 
 4
 Appellants first argue that the district court erred in refusing to hold a Franks hearing on the veracity of Agent Trout's smell testimony. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). They emphasize that Trout's January 9th testimony about smelling marijuana conflicted with his previous testimony that he walked right up to the underground structure and smelled nothing but diesel fumes. They also cite evidence that Trout had recently made a similarly questionable claim about smelling a marijuana crop from 50 yards away, see United States v. Depew, 8 F.3d 1424, 1425-26 (9th Cir.1993), and allege that Trout falsely told the magistrate judge in this case that nothing can mask the odor of marijuana. Finally, they offer affidavits from an olfactory expert, who would have testified on the detectability of marijuana under such circumstances and would have conducted a field test to evaluate Agent Trout's testimony.
 
 
 5
 The district court declined to hold a Franks hearing, ruling that the agents had probable cause to obtain a search warrant even without the smell testimony and that the smell testimony was not "necessary to the finding of probable cause." Franks, 438 U.S. at 155-56; United States v. Motz, 936 F.2d 1021, 1023 (9th Cir.1991); United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988); United States v. Perdomo, 800 F.2d 916, 920 (9th Cir.1986). We review this ruling de novo. United States v. Elliott, 893 F.2d 220, 222 (9th Cir.), amended on other grounds, 904 F.2d 25, cert. denied, 498 U.S. 904 (1990); United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir.1992).
 
 
 6
 Excluding Agent Trout's smell testimony, the evidence supporting probable cause included the following: (1) Another agent "heard" that Richard Nolte had a grow operation somewhere in the area; (2) Treleaven had prior drug convictions; (3) Treleaven held himself out as a contractor, appeared to have an income, and owned significant property, but did not appear to have a legitimate job and no one in the county building inspector's office had heard of his construction company; (4) the subject property was in a remote, inaccessible location and contained a concealed, heated, underground structure and garage, visible only by aerial surveillance and accessible only by foot; (5) the county had never issued any building permits for such an underground structure or the other buildings on the property; (6) the property contained a diesel generator, which appeared larger than needed to supply power to the residence; and (7) an anonymous informant who worked for Treleaven on the property was suspicious that the property was being used for illegal activity.
 
 
 7
 Appellants emphasize certain inadequacies in this information. In particular, they note that the anonymous informant had little personal knowledge, and that agents had no reason to believe that the anonymous informant was reliable. They also argue that the generator served the legitimate purpose of providing power to the residence and they question agents' ability to determine the size of the generator based on its sound.[2] Moreover, appellants argue, powering and heating a residence requires more power than the halogen lamps used to grow marijuana; thus, the size of the generator is not particularly probative.
 
 
 8
 Appellants also challenge the agents' testimony that the underground structure was hotter than an ordinary residence. They emphasize that, according to the agents' own testimony, marijuana grows optimally at temperatures of 75 degrees and does not grow well at temperatures over 80 degrees. Moreover, the presence of snow on the roof and the amount of heat emitted from a building depend on a variety of factors, including the amount of insulation in the building. According to appellants, a heated, underground structure in a remote wooded location might have any number of legitimate purposes.
 
 
 9
 However, in order to issue a warrant, a magistrate judge "need not determine that the evidence sought is in fact on the premises to be searched ... or that the evidence is more likely than not to be found where the search takes place ... [but only that] it would be reasonable to seek the evidence in the place indicated." United States v. Terry, 911 F.2d 272, 275 (9th Cir.1990) (quoting United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985)) (emphasis in the original).
 
 
 10
 Agent Trout testified that marijuana cultivators commonly use heated underground structures in remote locations. While appellants insist that the underground structure might have any number of legitimate purposes, the possibilities are not particularly convincing. Treleaven's underground structure was in an extremely remote location. It was built in such a way as to make its detection extremely difficult. Agents would not have detected it except for the snowy conditions. No evidence suggested the structure was being used for any legal purposes, and no identifiable crop lands could be found near the structure. Moreover, Treleaven appeared to have a substantial income, yet had no known employment or legitimate source of income. He had two prior drug convictions.
 
 
 11
 The informant's statements, while not sufficient in and of themselves to establish criminal activity, confirmed the agents' suspicions. The informant stated that Treleaven went out of his way to prevent his employees from examining the underground structure, warning him and his coworker that Nolte and another individual in the adjacent mobile home "smoked dope and were paranoid." He also said he heard a humming noise and saw vents, and his coworker described helping Treleaven frame a basement, but no house was ever built on the basement. Finally, the informant said that Treleaven paid him and his coworker $2,000 in $100 bills, which he took from an envelope in a briefcase containing other similar envelopes.
 
 
 12
 While the issue is close, we agree with the district court that this evidence is just sufficient to establish probable cause.
 
 II. The Curtilage Issue
 
 13
 Appellants also argue that Agent Trout illegally invaded the curtilage of Treleaven's mobile home. As they note, the Fourth Amendment extends protection to the curtilage, or area immediately surrounding a dwelling house. See United States v. Depew, 8 F.3d 1424, 1426 (9th Cir.1993) (another case involving Agent Trout's apparent affinity for hiking through remote wooded private property); see also United States v. Dunn, 480 U.S. 294, 301 (1987). Whether a given area is within the curtilage of a residence is a factual question, reviewed for clear error. Depew, 8 F.3d at 1425.
 
 
 14
 Here, the agents said they made certain observations from a ridge some 100 yards from the mobile home. The district court's conclusion that this location was not within the curtilage is not clearly erroneous. See, e.g., Dunn, 480 U.S. at 300-303 (barn 60 yards from house not within curtilage); United States v. Brady, 993 F.2d 177, 178-79 (9th Cir.1993) (outbuilding 45 feet from house not within curtilage); United States v. Traynor, 990 F.2d 1153, 1158-59 (9th Cir.1993) (shop 70-75 feet from house not within curtilage).
 
 
 15
 However, Agent Trout also testified that, on both January 2nd and 9th, he went "right up" to the underground structure, which was "adjacent to" or eight to nine feet from the garage. On these occasions, Trout likely invaded the curtilage: he passed numerous "no trespassing" and "keep out" signs, crossed a wire and flags indicating that the area was protected by an invisible dog fence and entered (in his own words) the "area" of the mobile home. See Depew, 8 F.3d at 1427 (holding, under very similar circumstances, that the district court "failed to accord sufficient weight to Depew's efforts to maintain his privacy and to Agent Trout's lack of objective data indicating that Depew's garage or driveway was not used for intimate activities of the house"); see also Los Angeles Police Protective League v. Gates, 907 F.2d 879, 885 (9th Cir.1990) ("[G]arages are commonly used for the storage of many household items besides automobiles. They are not like distant open barns or open fields to which the general public is given visual or physical access.").
 
 
 16
 However, appellants do not argue that agents collected any information other than Trout's smell testimony during these invasions and we have already concluded that probable cause existed without Trout's smell testimony. Thus, Trout's illegal invasions of the curtilage do not affect the warrant's validity and the evidence seized pursuant to the warrant is admissible.
 
 III. Anonymous Informant
 
 17
 Treleaven (but not Hier) also challenges the district court's treatment of the confidential informant. These arguments are without merit. The district court properly followed the procedures laid down in United States v. Kiser, 716 F.2d 1268 (9th Cir.1983), ordering the government to produce the informant and interviewing him in camera. The taped interview supports the district court's rulings that neither a Franks hearing nor disclosure of the informant's identity was necessary.
 
 
 18
 IV. Request for Franks Hearing on Other Issues
 
 
 19
 Finally, Treleaven (but not Hier) argues that appellants were entitled to a Franks hearing on issues other than smell (1) because Agent Trout said he spoke with the informant at 11:30 am on January 3rd, the same time he said he flew over Treleaven's property; (2) because Agent Trout said the garage roof was made of "black tar paper" when it was actually white; (3) because Agent Trout gave slightly inconsistent descriptions of the snow on the buildings; and (4) because Trout's description contained several other minor errors such as reporting two rather than three piles of brush.
 
 
 20
 These various minor discrepancies are not sufficient to entitle defendants to a Franks hearing. Treleaven has not shown that any of the various inaccuracies in Trout's description were material to a finding of probable cause or that the false statements or omissions were deliberately or recklessly made. Perdomo, 800 F.2d at 920. Even viewed in the light most favorable to Treleaven, these various inaccuracies suggest only inadvertent errors or mistakes about the details of what Trout had seen or when he spoke with the informant. None of them appear to be deliberate distortions.
 
 
 21
 Treleaven and Hier's convictions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We address Hier's challenge to his sentence separately in a published opinion
 
 
 [2]
 However, Trout said he talked to Leo Goss, an owner of Aptech, Inc., a supplier of large generators to hospitals and manufacturing type facilities, who said that based on Trout's description of the vents and the generator's sound and smell, it was likely a commercial generator not usually used to provide lighting for a home. According to Goss, such a generator would cost approximately $20,000