**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jesse Gary SOLIZ, Defendant–Appellant.**

No. 96–50685.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1997.

Decided Nov. 12, 1997.

Janice R. Mazur, Mazur & Mazur, El Cajon, CA, for Defendant–Appellant.

Larry Spong and Dennis J. Chow, Assistant United States Attorneys, San Diego, CA, for Plaintiff–Appellee.

Before: REINHARDT and TASHIMA, Circuit Judges, and FITZGERALD, District Judge.*

* Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

TASHIMA, Circuit Judge:

Defendant Jesse Gary Soliz appeals from his conviction on two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). He contends that the district court erred in denying his motions to suppress and for acquittal because the Border Patrol Agents conducted a warrantless search in violation of his Fourth Amendment rights. He also contends that the district court erred in denying his motion to suppress his sworn statement because it was taken in violation of his Fifth Amendment privilege against self-incrimination. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## BACKGROUND

The Border Patrol received reports of alien smuggling activity afoot at Apartment 4, 3142 National Avenue, in San Diego. Consequently, a group of six or seven agents, led by Agent Michael Bliven, went to the premises to investigate these reports.

3142 National Avenue is a rectangular lot with a two-story building in front and a one-story duplex in the back. Apartments 1 and 2 are located in the front building and Apartments 3 and 4 are located in the back duplex. Behind units 1 and 2 and across from units 3 and 4, there is an open gravel parking area which is accessible from a driveway gate, off of a public alley, at the back of the complex. From the alley, which is parallel to National Avenue, one is able clearly to see the parking area through a chain link fence which surrounds the entire property. The premises can also be accessed through a walk-in gate on National Avenue. On the day of the arrest, that gate was broken off and laying on the side of the fence. A walkway leads from the gate to the front of the two-story building and continues around to the back of the premises. There were no "No trespassing" signs on the property.

Upon arriving at the premises, two agents went to secure the alley while two others proceeded to the front door of the two-story building. Agent Bliven made his way to the rear of the property and, as he did so, he saw two cars parked in the gravel area. Agent Bliven observed Soliz standing behind one of the cars over its open trunk which contained three persons inside. Soliz saw Agent Bliven and started to close the trunk. Agent Bliven identified himself as "Border Patrol" and instructed Soliz to stop. After speaking with the persons in the trunk, Agent Bliven determined that they were Mexican nationals illegally in the United States and placed Soliz under arrest. At this time, several illegal aliens were caught attempting to flee from Apartment 4.

While in custody, Soliz was asked if he wanted to make a sworn statement regarding his true citizenship and nationality and his activity at the house. Soliz responded affirmatively. Thereafter, he was advised of his *Miranda* rights and was again asked if he were willing to make a statement. Soliz replied, "Yes, regarding my citi-citizenship." The questioning then proceeded as follows:

Agent: Your [sic] also being investigated concerning ... smuggling activity in the house by which you were arrested, you understand?

You understand that we're also gonna be asking questions about ... your activities.

Soliz: I thought this was just about my citizenship.

Agent: As initially stated in the—uh—beginning of the tape, I asked that we were gonna talk to your [sic] about you [sic] citizenship and the activities at the house in which you were arrested, okay, you said you would talk about your citizenship but I'm also asking you about the activities at the house sir.

Soliz: I don't know about these activities at the house.

Agent: Okay. According to our observations and also the material witnesses we have.

Soliz: I was sent there.

Soliz then proceeded to make admissions regarding his role in transporting illegal aliens.

Soliz moved to suppress his post-*Miranda* statements. Finding that Soliz had knowingly waived his *Miranda* rights, the district court denied the motion. Soliz also moved to suppress the evidence found at 3142 National Avenue, on the ground that the warrantless search violated the Fourth Amendment. The district court concluded that since there was no "surreptitious violation of the curtilage," Soliz's Fourth Amendment rights were not violated by the Border Patrol Agents. Soliz timely appealed from his conviction.

## DISCUSSION

### A. Determination of Curtilage

■ Whether an area is within the protected curtilage of a home is an essentially factual inquiry. *United States v. Depew,* 8 F.3d 1424, 1426 (9th Cir.1993) (citations omitted). Therefore, we review the district court's determination under the clearly erroneous standard. *Id.; United States v. Traynor,* 990 F.2d 1153, 1156–57 (9th Cir.1993).

■ The Fourth Amendment protects the curtilage of a home, and the extent of the curtilage is determined by whether the individual may reasonably expect that the area in question should be treated as the home itself. *United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987); *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984). The central component of this inquiry is "whether the area harbors the intimate activity associated with the sanctity of a man's home and privacies of life." *Id.* (internal citations and quotations omitted).

■ To aid in this inquiry, the Supreme Court has developed a four-factor test. The court must consider: (a) the proximity of the area claimed to be curtilage to the home; (b) whether the area is included within an enclosure surrounding the home; (c) the nature of the uses to which the area is put; and (d) the steps taken by the resident to protect the area from observation by people passing by. *Dunn,* 480 U.S. at 301, 107 S.Ct. at 1139–40. The Court has cautioned, however, that "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consider-

ation—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* With this instruction in mind, we proceed to analyze whether the area in question lay within the protected curtilage.

### First (proximity):

■ The parking area was adjacent to the residence, although the record does not reveal the distance between the parked cars and the apartment units. Our cases are not consistent as to the distance required for a finding of curtilage. *Compare Dunn,* 480 U.S. at 297, 107 S.Ct. at 1137–38 (distance of 50 yards within curtilage), *Depew,* 8 F.3d at 1427 (distance of 60 feet is close enough to permit a finding of curtilage if other factors support such a finding) and *Traynor,* 990 F.2d at 1158 (distance of 70–75 feet within curtilage), *with United States v. Brady,* 993 F.2d 177, 178 (9th Cir.1993) (45 feet outside curtilage). Proximity is not determinative as there is no fixed distance at which curtilage begins or ends. *See Depew,* 8 F.3d at 1427. Here, the proximity is certainly close enough to support a finding of curtilage, if other factors support such a finding. *See id.*

### Second (enclosure):

■ A fence surrounded the entire property. However, it was a chain link fence through which the public could easily see—it was not intended to shield the property from public view. The mere existence of such a fence does not necessarily demonstrate enclosure of curtilage. *See United States v. Van Damme,* 48 F.3d 461, 464 (9th Cir.1995) (wire fence surrounding home and greenhouse was a perimeter fence rather than fence surrounding only the home and the curtilage).

### Third (use):

The use factor is helpful in determining whether the parking lot was an area which contained activities associated with the "sanctity of a man's home and the privacies of life." *Oliver,* 466 U.S. at 180, 104 S.Ct. at 1735. There is no evidence that the parking

lot was used for private activities connected with the sanctity of the home. *See Depew,* 8 F.3d at 1427 (emphasizing that defendant frequently walked around in the nude in the driveway outside his garage). Rather, it was a shared area used by the residents and guests for the mundane, open and notorious activity of parking. This is not the type of area which we have determined in the past to have the requisite expectation of privacy required to bring it within the protections of the Fourth Amendment. *See United States v. Magana,* 512 F.2d 1169, 1170–71 (9th Cir. 1975) (stating that driveway is only a semi-private area). We doubt whether, in the absence of evidence of intimate activities, a shared common area in a multi-unit dwelling compound is sufficiently privacy oriented to constitute curtilage. *See United States v. Acosta,* 965 F.2d 1248, 1257 (3d Cir.1992) (apartment backyard shared with others not part of apartment curtilage); *United States v. Cruz Pagan,* 537 F.2d 554, 558 (1st Cir. 1976) (common basement area not part of curtilage); *Commonwealth v. Thomas,* 358 Mass. 771, 267 N.E.2d 489, 491 (1971) (cellar of apartment building not part of curtilage).

### Fourth (steps taken to prevent observation):

No steps were taken here to prevent outside observation of the parking area. The fence surrounding the property did not prevent people from peering in, the gate was strewn on the ground, and the property could be viewed from both the street and the alley. *See Traynor,* 990 F.2d at 1158 (defendant took no steps to shield area from view of persons standing on adjacent property). Additionally, there were no "No Trespassing" signs posted. *See Depew,* 8 F.3d at 1428 (citing *Dunn,* 480 U.S. at 301, 107 S.Ct. at 1139–40). Unlike the defendant in *Depew* who went to great lengths to ensure his privacy, Soliz took no such steps. *See Depew,* 8 F.3d at 1428 (defendant chose residence because it was in a remote, secluded area not visible from the highway; defendant maintained post office box in town and read his own meter so that no postal worker or meter reader came to his premises).

Analysis of the four factors supports the district court's finding that there was no violation of the curtilage in this case. The first and second factors could support a finding of curtilage. However, the third and fourth factors strongly militate against such a finding. We conclude that the parking area in which Agent Bliven found Soliz was not "so intimately tied to the home itself" to be "placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn,* 480 U.S. at 301, 107 S.Ct. at 1140. The district court did not clearly err in finding that the parking area was not curtilage. Thus, there was no Fourth Amendment violation.[1]

### B. Selective Waiver of *Miranda* Rights

■ Soliz argues that the district court erred in denying his motion to exclude his sworn statement regarding his activities at 3142 National Avenue because it was taken in violation of his Fifth Amendment privilege against self-incrimination. Soliz claims that he selectively waived his *Miranda* rights only regarding his citizenship and that his other statements regarding his activities at 3142 National Avenue were obtained in violation of his privilege against self-incrimination.

■ We review de novo the district court's decision to admit the statement. *Smith v. Endell,* 860 F.2d 1528, 1532 n.3 (9th Cir.1988). The district court's factual findings are reviewed for clear error. *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1282 (9th Cir.1992).

■ A defendant may selectively waive his *Miranda* rights by agreeing to answer some questions but not others. *Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975); *Bruni v. Lewis,* 847 F.2d 561, 564 (9th Cir. 1988); *United States v. Thierman,* 678 F.2d 1331, 1335 (9th Cir.1982). A valid waiver under the Fifth Amendment does not require that the criminal suspect be aware of all crimes about which he may be questioned. *Colorado v. Spring,* 479 U.S. 564, 577, 107

---

1. Because we affirm the district court's no-curtilage finding, we do not reach the government's challenge to Soliz's standing to assert a Fourth Amendment claim.

S.Ct. 851, 859, 93 L.Ed.2d 954 (1987). However, the authorities must "scrupulously honor" the suspect's right to cut off questioning. *United States v. Lopez–Diaz,* 630 F.2d 661, 664 (9th Cir.1980).

Here, Soliz responded affirmatively when asked whether he desired to have his sworn statement taken regarding his true citizenship and nationality and his activity at the house.[2] Then the Agent Mirandized Soliz. At the conclusion of the *Miranda* warnings, the Agent again asked Soliz if he were willing to make a statement. Soliz then replied, "Yes, regarding my ... citizenship." We find that this statement constituted an unequivocal invocation of Soliz's right to remain silent on all issues, except his citizenship.[3]

 A person in custody may selectively waive his right to remain silent by indicating that he will respond to some questions, but not to others. *Lopez–Diaz,* 630 F.2d at 662; *Lorenzo,* 570 F.2d at 297–98. In telling the Agent that he was willing to make a statement about his citizenship, Soliz selectively waived his Miranda rights respecting the inquiry into his citizenship only. In *Lopez–Diaz,* the defendant stated that he did not wish to discuss the drugs found in the van but would be willing to discuss other subjects. 630 F.2d at 664. Similarly, in *Mosley,* the defendant stated that he did not wish to discuss the offense for which he was being held. 423 U.S. at 105–06, 96 S.Ct. at 327–28. We do not read these cases as imposing a requirement that a suspect in custody can selectively waive his right to remain silent only by providing the police with a list of subjects which are taboo for purposes of interrogation. Rather, a suspect may selectively waive his right to remain

silent in one of two ways. He may either tell the police that he will not discuss certain subjects, *see Mosley,* 423 U.S. at 103–05, 96 S.Ct. at 326–27; *Lopez–Diaz,* 630 F.2d at 664, or the suspect may choose the path which Soliz took and inform the police that he is willing to discuss only specific subjects. Both approaches effectuate *Miranda's* requirement that a suspect in custody have the right to remain silent or, at his discretion, to limit questioning. *Id.*

 After Soliz invoked his right to remain silent on all subjects, except his citizenship, the agent violated his right by proceeding to question him about other activities. "Once a person has indicated that he does not wish to talk about a particular subject, all questioning must cease." *Id.* at 664 n. 2. A statement obtained after the invocation of the right to remain silent is admissible only where the individual's "right to cut off questioning" has been "scrupulously honored." *Id.* at 664 (citing *Mosley,* 423 U.S. at 104–07, 96 S.Ct. at 326–28). Here, the Agent did not "scrupulously honor" Soliz's right to cut off questioning. Rather, he ignored Soliz's restriction on the subject matter of questioning and proceeded to question him about matters other than his citizenship in direct contravention to that limitation. Because Soliz's statements regarding his activities at 3142 National Avenue were obtained in violation of his *Miranda* rights, the district court erred in not suppressing them.[4]

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for a new trial.

---

**2.** This fact was in dispute at the suppression hearing. However, the district court credited the government's version of events. We accept this finding as not clearly erroneous. *Negrete–Gonzales,* 966 F.2d at 1282.

**3.** In *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994), the Supreme Court held that in order for *Miranda's* right to counsel to apply, it must be unambiguously invoked. At oral argument, the government suggested for the first time that this same standard should apply to the invocation of the right to remain silent under *Miranda,* a ques-

tion which remains open in this circuit. Because the issue was not briefed and because we find, in any event, that Soliz did unambiguously invoke his right to remain silent, we do not decide whether some lesser level of "indication" would suffice.

**4.** Although *Miranda* violations may be subject to harmless error review, *see United States v. Harrison,* 34 F.3d 886, 893 (9th Cir.1994), the government does not contend that this violation is harmless. We therefore need not undertake that analysis.