**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey HOPPER, Defendant–Appellant.**

**No. 01–5811.**

United States Court of Appeals,
Sixth Circuit.

Jan. 21, 2003.

Before BOGGS and COLE, Circuit Judges, and BATTANI, District Judge.*

PER CURIAM.

Before the court is an appeal arising out of Appellant Jeffrey Hopper's conviction for drug-trafficking offenses. In the proceedings below, Appellant made four motions to suppress the Government's evidence on Fourth Amendment grounds, all of which were denied. Specifically, Appellant moved to suppress all articles and evidence found in the search of his residence based on the following four grounds: 1) the police's initial arrival onto his property was an illegal trespass; 2) the search followed an illegal seizure of his wife, and was conducted without her consent before arrival of a warrant; 3) the search warrant was based on an affidavit containing false statements and illegally obtained information; and 4) the police obtained the warrant from a judicial commissioner who was unauthorized to issue warrants. Appellant now appeals the denial of those motions. We **AFFIRM.**

## I. Factual Background

### A. The Initial Presence on Appellant's Property

As of the summer of 1999, federal law enforcement had begun suspecting Appellant and his associate William Secker of conducting marijuana-growing operations in their homes. On Sept. 1, 1999, federal and state officers executed a search warrant on the Secker residence in Tallassee, Tennessee, and found a large amount of marijuana-growing paraphernalia. Several officers then went to the Hopper residence for consent to search Appellant's house. When the officers turned into the Appellant's driveway, they drove past three "No Trespassing" signs. Officers claimed not to have noticed the signs. The officers knocked on the front and back doors but no one responded. Under the raised deck behind Appellant's house, officers observed PVC pipe and styrofoam insulation boarding with reflective tape on it, similar to materials found in use at the Secker residence to grow marijuana.

### B. The Contact with Appellant's Wife and Subsequent Search of the House

Finding no response at Appellant's house, officers returned to the Secker residence. That afternoon, officers stopped a red Chevrolet Blazer that approached the Secker residence, but then turned around in a neighbor's driveway to leave. Vickie Hopper, Appellant's wife, was driving, while her friend and two children were passengers. The occupants of the car all testified that the officers approached their vehicle with their guns drawn. The officers denied this, claiming that they only

* The Honorable Marianne O. Battani, United States District Judge for the Eastern District of Michigan sitting by designation.

had their hands on their weapons in accordance with normal police procedure, and the district court accepted the officers' version of the story. An officer asked Mrs. Hopper to exit the vehicle, then read her the *Miranda* warnings. Mrs. Hopper was informed that her husband's name and residence had come up during a drug investigation, and that the officers wished to speak with him pursuant to that investigation. The officers maintain that Mrs. Hopper voluntarily agreed to return to Appellant's house with them, while Mrs. Hopper alleges that the officers gave her no choice but to go. Once again, the district court accepted the officers' story over Mrs. Hopper's.

En route to the Hopper residence, the officers asked Mrs. Hopper if her husband had any weapons in the house. She confirmed that Appellant had several weapons inside, and also carried a weapon in his pocket. The police then asked Mrs. Hopper if she would allow officers to do a protective sweep of the residence, to which Mrs. Hopper agreed. During the sweep, the officers found weapons and smelled marijuana, and then asked Mrs. Hopper to consent to a full search of the house. Mrs. Hopper, on the advice of her attorney, refused to give her consent, and asked the officers to leave. The officers exited the house but remained on the property to secure it while waiting for a search warrant. Furthermore, to protect against the potential destruction of evidence before arrival of the warrant, the police prevented Mrs. Hopper from reentering her house unaccompanied by an officer. An hour later, before the police had actually left to get the warrant, Mrs. Hopper changed her mind and verbally consented to the search. The police informed her that she would need to sign a written consent form, which she did. After signing the form, Mrs. Hopper unlocked the outside door to the basement. During the search, however,

Mrs. Hopper withdrew consent to search her house, so the officers stopped searching and sent an officer to get a warrant. The officers waited outside until the warrant arrived. The officers then finished their search, and found a marijuana-growing operation, including 350 marijuana plants, numerous other items related to a marijuana growing operation, numerous weapons, and $2640.

## C. Proceedings Below

Appellant was charged in May 2000 with growing and possessing marijuana plants, and possessing firearms in furtherance of his drug trafficking scheme. In October 2000, Appellant's counsel filed four motions to suppress evidence found in the search of the Hopper residence. In March 2001, in the United States District Court for the Eastern District of Tennessee, a federal grand jury returned a three-count Superseding Indictment against Appellant, charging him with (I) manufacturing in excess of 100 marijuana plants, (II) possessing, with the intent to distribute, more than 100 marijuana plants, and (III) possessing, using, and carrying firearms during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). In April 2001, United States District Judge Leon Jordan denied all of Appellant's motions to suppress evidence. Shortly thereafter, Appellant pled guilty to Count I, and was sentenced to 60 months imprisonment. Appellant's plea agreement, however, reserved the right to appeal the denial of the motions to suppress.

## II. Discussion

When reviewing decisions on motions to suppress, Courts of Appeal will uphold the factual findings of the district court unless clearly erroneous, legal conclusions will be reviewed *de novo*, and the evidence must be reviewed in the light most likely to

support the district court's decision. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir.2000).

## A. The "Illegal Trespass" Claim

Appellant's first motion to suppress evidence alleged that the officers' observation of PVC pipe and styrofoam insulation was the product of an illegal trespass onto his property. Specifically, Appellant contends that the officers' entry onto his property, without a warrant and in spite of two "No Trespassing" signs, was illegal. Appellee responds that the mere presence of "No Trespassing" signs does not make the officers' entry onto the curtilage of Appellant's property an improper search, because law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants.

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected, reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Therefore, the officers' "trespass" was only relevant in a Fourth Amendment sense if it invaded Appellant's reasonable expectation of privacy. *United States v. Jackson*, 585 F.2d 653, 659–60 (1978). Under certain circumstances, Fourth Amendment protection does extend to the "curtilage" of a home, defined as the area outside the house which harbors the "intimate activity associated with the sanctity of a man's home and the privacies of his life." *Oliver v. United States*, 466 U.S. 170, 180–81, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Specifically, an area's status as protected curtilage depends on consideration of four factors: 1) the proximity of the area claimed to be the curtilage to the home; 2) whether the area is included within an enclosure surrounding the home; 3) the nature of the uses to which the area is put; and 4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

■ Under this four-factor test, the police did not violate Appellant's Fourth Amendment rights with respect to his curtilage. The "No Trespassing" signs, the purported outside boundary of the curtilage, were within visual distance of the Hopper home. Appellant's home, however, was not enclosed. Furthermore, Appellant makes no argument that the area where the "No Trespassing" signs were posted was put to any special use. Fourth and finally, Appellant took no special measures to protect the area from open observation. Moreover, even if Appellant's curtilage had enjoyed constitutional protection, the actions of the police in this case would not have violated the Fourth Amendment because law enforcement officials may encroach upon the curtilage of a home for the purpose of asking questions of the occupants. *United States v. Hammett*, 236 F.3d 1054,1059 (9th Cir. 2001). Furthermore, if the front and back of a residence are readily accessible from a place, like a driveway or parking area, the Fourth Amendment is not implicated where officers go to the back door reasonably believing it is used as a principal entrance to the dwelling. *United States v. Freeman*, 426 F.2d 1351, 1352–53 (9th Cir.1970). Similarly, if the front door is inaccessible, there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview

the person. *United States v. Daoust,* 916 F.2d 757, 758 (1st Cir.1990).

Appellant attempts to rely on three different cases in support of his argument. First, he cites *United States v. Depew,* 8 F.3d 1424, 1427–28 (9th Cir.1993), for the proposition that the "No Trespassing" signs made encroachment onto his curtilage presumptively unreasonable. In *Depew,* however, the defendant not only posted "No Trespassing" signs, but took several additional measures in a comprehensive effort to protect the area from outside interference. *Id.* at 1428. Specifically, "Depew chose the residence at issue because it was in a remote, secluded area. It was not visible from the highway below due to the long driveway, a row of thick trees blocking the view, and the lower elevation of the highway. Depew had a post office box in town and read his own meter so that no postal worker or meter reader came to his premises." *Id.* Thus, *Depew* is clearly distinguishable from the instant case, where Appellant did not take any other measures to protect his curtilage.

Appellant also relies on *United States v. Haddix,* 239 F.3d 766, 767 (6th Cir.2001), and *United States v. Morgan,* 743 F.2d 1158, 1162–63 (6th Cir.1984), for the proposition that a warrantless entry onto a defendant's property violates the Fourth Amendment absent exigent circumstances. These cases are inapplicable because Appellant did not have a Fourth Amendment privacy interest in the area he claims as his curtilage. Consequently, there was no need to show exigent circumstances. In conclusion, the district court properly denied Appellant's first motion to suppress.

### B. The "Illegal Seizure" Claim

Appellant's second motion to suppress alleges that the search of his house was the product of the illegal seizure and/or arrest of his wife. In particular, Appellant argues that Mrs. Hopper was illegally seized at the Secker residence, illegally detained and transported against her will to her residence, and that her consent to search the house was involuntary. Appellant further argues that even if the consent was voluntary, it could not cure the unlawful seizure. Appellee responds that 1) Appellant lacks standing to seek suppression of evidence based on Mrs. Hopper's alleged illegal stop and detention; 2) a *Terry* stop of Mrs. Hopper was warranted because her approach to, and sudden hasty retreat from, the Secker residence provided reasonable suspicion that she had some connection to the Secker property; and 3) Mrs. Hopper's admission that Appellant had weapons in the house and on his person gave officers probable cause to conduct a protective sweep of the premises.

■ Appellee is correct that Appellant cannot suppress evidence based on the purportedly illegal seizure of his wife, a third party. Fourth Amendment rights are personal rights that, like some other constitutional rights, may not be vicariously asserted. *Jones v. United States,* 362 U.S. 257, 261–62, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In other words, suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *United States v. Padilla,* 508 U.S. 77, 81, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993). Thus, it is unnecessary for this court to consider whether the police stop of Mrs. Hopper's car was a Fourth Amendment violation.

■ The court does, however, consider and reject Appellant's argument that the police did not have valid consent to sweep and search his house. Appellee alleges that Mrs. Hopper was ordered to get into

the police car at gunpoint, denied an opportunity to gather her purse, speak to her children or friend, or follow the officers in her own vehicle, and that under these circumstances her consent for a sweep of the house was not voluntary. These factual assertions from Appellant were rejected by the district court in favor of contradictory testimony from the police. The district court's choice to believe the testimony of the officers on these points was not clearly erroneous, and under those facts, Mrs. Hopper's consent to accompany the officers, and later to the protective sweep, was voluntary. In short, because Appellant has no standing to challenge the police's stop of Mrs. Hopper, and because the sweep of his home was conducted with Mrs. Hopper's voluntary consent, the district court properly denied Appellant's second motion to suppress evidence.

### C. The "Faulty Affidavit" Claim

Appellant's third motion to suppress alleged two fatal infirmities in the affidavit underlying the search warrant. Appellant first argues that the judicial commissioner would not have issued the search warrant if the affidavit had revealed the following facts: 1) the officers twice ignored two "No Trespassing" signs; 2) Ms. Hopper was illegally stopped and taken to her residence against her will; 3) Ms. Hopper was held captive for two hours without her consent; and 4) the officers' knowledge of PVC pipe, styrofoam, and the marijuana-growing operation itself were illegally obtained. Second, he argues that the affidavit supporting the search warrant did not provide probable cause because it lacked any reference to the basis of knowledge of the informant.

Appellant cites *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), presumably to show that the basis of knowledge of an informant supplying hearsay information is a general requirement in testing the sufficiency of an informant's information. Appellee responds that corroborated confidential informant testimony may be relied upon as a substantial basis for issuing a search warrant, *see United States v. Brown*, 147 F.3d 477 (6th Cir.1998), and that the information contained in the affidavit, including the items found in plain view outside Appellant's home, provided more than the substantial basis necessary to conclude that probable cause existed. *Gates*, 462 U.S. at 238–39.

In *Gates*, the Supreme Court established that a warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* at 236. Courts should pay great deference to the determinations of probable cause made by a magistrate, whose judgment "should not be set aside unless arbitrarily exercised." *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. While an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report, these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. *Id.* at 230. Rather, they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place. *Id.*

■ Appellant's first complaint about the affidavit fails because none of the omitted information was relevant to a determination of probable cause. As explained above, the initial "trespass" onto the Hopper property and the sweep of the Hopper residence were all permissible under the Fourth Amendment and therefore would not have undermined the finding of probable cause if included in the affidavit. Appellant's second issue with the affidavit similarly lacks merit because the *Gates* test is satisfied in the instant case. The affidavit documented a reliable confidential informant who told police that Appellant and Secker were conspiring to manufacture marijuana at their residences. Furthermore, officers observed marijuana equipment when they went to Appellant's residence to interview him, and found an indoor growing operation in the Hopper house after Mrs. Hopper's consent to search. The absence of any reference to the basis of knowledge of the informant is excused, under the totality of the circumstances, by the officers' first-hand encounters, and Appellant's arguments that the affidavit was defective therefore fail.[2]

### D. The "Judicial Commissioner" Claim

Fourth and finally, Appellant Hopper contends that the judicial commissioner in this case lacked authorization to issue the search warrant, specifically because under Fed.R.Crim.P. 41(a) and 41(c), only federal magistrate judges or state court judges—not judicial commissioners—are authorized to issue a federal search warrant. *See Byars v. United States,* 273 U.S. 28, 47, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Appellee responds that the search of the Hopper residence was purely a state search, that under Tennessee law judicial commissioners are magistrates authorized to issue state search warrants. Tenn.Code Ann. §§ 40–5–102(3) and 40–6–105.

In relevant part, Fed.R.Crim.P. 41(a) states that "[u]pon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed."

■ Federal, not state, law governs the validity of a search warrant in a federal criminal proceeding. *United States v. Shields,* 978 F.2d 943, 945 (6th Cir.1992). Rule 41, however, only applies to federal law enforcement endeavors, not to warrants for state investigations. *United States v. Bennett,* 170 F.3d 632, 635 (6th Cir.1999). The states may develop their own workable rules governing arrests, searches and seizures, even if those rules do not comport with the Federal Rules, as long as the state rules do not violate constitutional dictates. *United States v. Searp,* 586 F.2d 1117, 1121 (6th Cir.1978). The key inquiry here, then, is whether the search of Appellant's house was a federal search implicating Rule 41, or merely a state search to which Rule 41 would not apply.

Under *Searp,* the search in this case counts as a federal search. In *Searp,* the FBI and Kentucky police jointly undertook an investigation into several bank robberies, which were simultaneously state and federal crimes. *Id.* at 1121. The *Searp* court held that as federal agents were

---

**2.** Because the court finds that the affidavit provided sufficient probable cause for a search warrant, it does not consider whether

the officers acted on the warrant in good faith pursuant to *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

substantially involved in the search, the search was federal, and that in such a case *"the fact that the search is also a state search cannot affect the federal agents' duty to comply with the federal rules."* *Id.* (emphasis added). *See also United States v. Twenty–Two Thousand, Two–Hundred and Eighty Seven Dollars ($22,-287.00), United States Currency,* 709 F.2d 442, 447 (6th Cir.1983) (finding that Rule 41(c) applied where a warrant and affidavit were sworn out on state forms and obtained by a state police officer, but a federal agent was involved in the investigation and participated in the search). Similarly, here federal officers were also conducting a federal investigation, with the help of state officers, for use in a federal prosecution. Appellee maintains that because a state officer obtained the search warrant from a state magistrate, the search warrant was a state search warrant excluded from the requirements of Rule 41(a). The federal agents were clearly substantially involved with the obtaining of the warrant, however, so *Searp*'s participation doctrine applies here: when a federal officer has participated in an official capacity, his or her conduct, and thus the legality of the search, is to be judged by federal standards, including Rule 41. *Searp,* 586 F.2d at 1121.

The search here clearly violated the mandates of Rule 41. While Tenn.Code Ann. § 40–5–102 and Tenn.Code Ann. § 40–6–10 authorize judicial commissioners to issue state search warrants, *United States v. Finch,* 998 F.2d 349, 351 (6th Cir.1993), judicial commissioners are neither federal magistrates nor a state court of record, and so lack authority to issue federal search warrants. *United States v. Elkins,* 732 F.2d 1280, 1286 (6th Cir.1984). For the foregoing reasons, and contrary to the findings of the district court, the search of the Hopper residence was a federal search that both triggered and violated Rule 41.

■ The inquiry does not end here, however. The use of the exclusionary rule to remedy statutory violations is a discretionary matter. *Searp,* 586 F.2d at 1123. Because, by their very nature, the Rules of Procedure blend constitutional limitations on police activity, procedural limitations designed to avoid constitutional violations, and purely administrative "housekeeping" rules, the remedies for noncompliance must vary accordingly. *Id.* at 1124. In cases such as this one, in which a joint search has been conducted by both state and federal officers, relying on a state search warrant, the Sixth Circuit has adopted two general guidelines regarding application of the exclusionary rule. First, this court has dictated a threshold standard that the exclusionary rule should not even be considered unless the federal officers have violated a "Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Id.* at 1124. Once this threshold standard has been met, violations of Rule 41 alone still should not lead to exclusion unless 1) there was prejudice in the sense that the search might not have occurred or would not have been so intrusive if the Rule had been followed, or 2) there is evidence of intentional and deliberate disregard of a provision of the rule. *Id.* at 1125.

Although this court has not yet addressed the particular issue before it today, other federal courts have made it clear that the "federal magistrates" and "court of record" requirements of Rule 41(a) are Rule-based policies designed to protect the integrity of the federal courts. *See, e.g., United States v. Passero,* 385 F.Supp. 654 (D.Mass.1974); *United States v. Perez,* 375 F.Supp. 332 (W.D.Tex.1974). Thus this court must proceed to the two-prong test for exclusion of evidence. With respect to the first prong, although the police failed to comply with the procedural

requirements of Rule 41(a), the search was nevertheless "reasonable" in the constitutional sense, because it was conducted pursuant to a valid state warrant and met the requirements of the Fourth Amendment. Moreover, it is difficult to imagine the violation in question either to have unduly prejudiced the Appellant, or to be one of bad faith by the officers. Officers discovered the marijuana-growing operation prior to seeking the search warrant, and as such had more than probable cause. Thus, neither of the two *Searp* justifications for exclusion has been satisfied, and so the fourth motion to suppress should also have been denied. *Id.* at 1125.

## III. Conclusion

For the reasons stated above, we AFFIRM the judgment of the District Court denying Appellant's motions to suppress.