**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tovaus Dejuan DISHMAN,**
**Defendant–Appellant.**

No. 99–6316.

United States Court of Appeals,
Sixth Circuit.

June 7, 2001.

Before WELLFORD, SILER, and BATCHELDER, Circuit Judges.

PER CURIAM.

Appellant Tovaus Dishman appeals the District Court's denial of his motion to suppress crack cocaine found in his jacket, claiming that the search violated the Fourth Amendment. We affirm the decision of the District Court.

## I.

Defendant–Appellant Tovaus Dishman was indicted on one count of knowingly and intentionally possessing with the intent to distribute in excess of five grams of crack cocaine, in violation of 21 U.S.C. § 841(d)(1). Dishman entered a plea of not guilty, and filed a motion to suppress the crack cocaine found in his jacket, claiming that the search which produced the drugs violated his Fourth Amendment rights. The District Court denied this motion. Dishman then entered a conditional plea of guilty, preserving the Fourth Amendment issue for appeal. The court sentenced Dishman to sixty months in prison. This timely appeal followed.

In the early morning hours of December 20, 1998, Fayette County, Kentucky, police officer Keith Ford responded to a suspicious-vehicle complaint at an apartment complex known for illegal gambling and drug activity. When officer Ford arrived at the scene, he saw a car, occupied by three males, that matched the description of the suspicious vehicle. He approached the car and asked the occupants what they were doing. The driver replied that they were "waiting for a girl." None of the occupants was able to supply the young lady's name or address, but they were all confident that she lived in one of the nearby apartment complexes and would be joining them shortly. Officer Ford re-

quested identification from the three and ran a records check.

The check indicated that the defendant, Dishman, the passenger in the back seat of the car, had an outstanding criminal summons for a probation violation. Ford discussed this with Officer Edward Duerson, who had arrived to assist him. While they were discussing how to proceed, the officers observed Dishman remove the jacket he was wearing. The officers found this suspicious because it was late December, the temperature was around 40 degrees, and a light mist was falling. Ford presented Dishman with a citation to appear in court and asked him to step out of the car. Dishman complied, leaving his jacket in the car. Explaining that the police had received a complaint from the apartment complex, Ford asked Dishman for permission to search him and his belongings to make certain that he was not involved in the criminal activity that frequently occurred in the area. According to the officers, Dishman consented to this search.

Officer Ford found nothing incriminating on the defendant's person and asked him to step to the rear of the car. Ford then approached the other occupants of the car and asked them to exit the vehicle. They complied, and also consented to personal searches. Ford then asked the driver, Geovadi Martin, for permission to search the car. According to the officers, Martin consented to the search. When Ford removed the jacket from the back seat and began to search it. Dishman asked whether Ford could search the coat. Ford replied, "You said that I can," referring to Dishman's earlier consent to a search of his person and his belongings. Dishman responded: "Well, I don't think you can." Ford then asked Dishman whether the coat belonged to him, and, moving toward Officer Ford and the coat, Dishman answered: "No. Well, why does it matter?" Officer Duerson ordered him to stand back. During this exchange, Officer Ford discovered a bag containing crack cocaine in a zippered pocket of the jacket. He arrested Dishman for possession of the drugs.

Prior to trial, Dishman moved to have the crack cocaine suppressed. At the hearing on the motion, defense counsel argued that there had not been a meeting of the minds between the officers and Martin and Dishman, and that the officers' good faith belief that Martin and Dishman had consented to the search was the result of a misunderstanding. The government called Officers Ford and Duerson, who testified that Dishman and Martin had consented to the respective searches, and that neither had revoked his consent. Defendant's counsel then called Martin, who testified that neither he nor his cousin Dishman had consented to the search of the car or the jacket. The court found the officers' testimony more credible than Martin's (Dishman did not testify) and found that both Dishman and Martin had consented to the searches, and neither of them had effectively revoked that consent.

The sole issue Dishman raises on appeal is whether the search of the car and of his jacket violated his Fourth Amendment rights.

## II.

The factual issue presented to the district court was whether either Dishman or Martin had given a valid consent to a search that included Dishman's jacket. The burden of demonstrating valid consent to search falls upon the government. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir.1997); *United States v. Williams*, 754 F.2d 672 (6th Cir.1985). This court will overturn a district court's factual de-

termination only if that determination is clearly erroneous. *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir.1998), cert. denied, 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citations omitted).

In determining the scope of consent given, the court looks to what a reasonable person would understand from the exchange between the officer and the suspect. *United States v. Gant,* 112 F.3d 239, 242 (6th Cir.1997). The scope of the consent determines the permissible scope of the search. *Florida v. Jimeno,* 500 U.S. 248, 251–52, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

According to the officers, Dishman consented to a search of his person and his belongings. On appeal, Dishman contends he never gave consent to search the jacket, and in the alternative, that he revoked any consent by asking whether the officer could search the jacket. Relying on Officer Duerson's and Officer Ford's version of the facts, the district court found that Martin had consented to the search of his vehicle and that Dishman had consented to the search of his person. The district court further found that Martin had not withdrawn his consent to the search of the car, and that, although Dishman's consent "probably" included the jacket left inside the car, it was not necessary for the court to reach that question because Martin's consent covered the jacket and Dishman's consent to search it was therefore not required.

■■■ Dishman argues on appeal that to the extent that he initially might have consented to a search of the jacket, his exchange with Officer Ford about whether the officer could search the jacket cannot be interpreted as anything other than a withdrawal of that consent. This, of course, overlooks the fact that during that same exchange, Dishman denied that the jacket was his. If Dishman did not actually own or possess the jacket, the search did not violate Dishman's Fourth Amendment rights. *See United States v. Peters,* 194 F.3d 692, 695–96 (6th Cir.1999) *cert. denied,* 528 U.S. 1174, 120 S.Ct. 1203, 145 L.Ed.2d 1106 (2000) (a suspect has no Fourth Amendment interest in abandoned property). If, as he admitted after the search, the jacket did belong to him, we think that a reasonable officer would have understood that Dishman's consent to search his person and his belongings included it. Further, the testimony of both officers, credited by the trial judge, indicated that Officer Ford's discovery of the crack cocaine in the jacket and Dishman's question about whether the officer could search the jacket happened at the same time. We are satisfied that, whether by abandonment or consent, the search of the jacket did not violate the Fourth Amendment.

III

■■■ Further, even assuming arguendo that Dishman had not consented to the search of the jacket, or had somehow revoked his consent, the jacket was properly subject to search because Martin, the driver of the car, permitted the officers to search the car. Although Martin claimed during the suppression hearing that he had not consented to this search, the court chose to credit the version of the story told by the two police officers. Our review of the transcript yields no basis upon which we could find that the district court's findings of fact, including the finding that Martin consented to the search of the car

and did not withdraw that consent, were clearly erroneous. A general consent to search a car extends to items and containers within that car. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Even assuming Dishman had an expectation of privacy in the car, Martin's consent to search the vehicle and its contents trumps this expectation. *See United States v. Dunson,* 940 F.2d 989, 995 (6th Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992). By leaving the coat in the back seat of the car when he exited, Dishman placed the coat within the scope of Martin's general consent to search the car.

## V.

For the foregoing reasons, we AFFIRM the order of the district court.